MYRTLE BROWN, Respondent, v. PACIFIC MUTUAL LIFE INSURANCE COMPANY, Appellant.

Kansas City Court of Appeals, November 7, 1904.

1. **ACCIDENT INSURANCE: Premiums: Orders on Paymaster: Forfeiture.** Premiums were paid by orders on a paymaster. The policy provided that if default was made in the payment of any premium the policy should be void as respects the corresponding and subsequent periods and so also the failure to leave the installment in the hands of the paymaster worked a like forfeiture. A payment was made in May which covered a period reaching to June 20. On June 28, assured settled with the paymaster, giving receipt in full and leaving nothing to pay the June installment. Assured was killed by accident August 6. *Held*, the failure to make June payment avoided the policy and the beneficiary could not recover.

2. ———: **Payment of Premiums: Orders on Paymaster: Assignment.** The orders on a paymaster were only conditional assignments of wages to be earned and the assured could at any time draw his whole wages and so forfeit the policy.

3. ———: ———: ———: ———: **Instructions.** Instructions set out in the opinion are approved as correct expressions of the law.

Appeal from Buchanan Circuit Court.—*Hon. Henry M. Ramey,* Judge.

REVERSED.

*J. C. Rosenberger* for appellant; *Fox & Gray* of counsel.

(1)   Upon the undisputed evidence the judgment should have been in favor of defendant.  The insured, by drawing all of his wages on June 28th, leaving nothing in the paymaster's hands with which to pay the second premium, elected to treat the insurance as at an end and it would be unconscionable to allow plaintiff to derive any benfit from the policy in view of the express provisions of the contract and the conduct of insured.   Clause 11 of the policy (supra).   Bane v. Ins. Co., 85 Ky. 667; Landis v. Ins. Co., 6 Ind. App. 502; McMahon v. Ins. Co., 77 Ia. 229; Herbert v. Ins. Co., 47 Ohio Law Bull. 225; York v. Ins. Co., 51 W. Va. 38; Reed v. Ins. Co., 117 Ga. 116; Rochelle v. Ins. Co., 13 Tex. Civ. App. 232.   (2)   It will be noticed that one of the distinguishing features of this policy is that it is not a policy for a day, a year or any specified period of time but provides for four separate and distinct insurance periods during which the insurance shall be in force provided the premium specified for each period shall have been "actually paid" to the company and not otherwise.

*John George Parkinson* for  respondent.

(1)  Wages not yet earned may be legally assigned. Hax v. Plaster Co., 82 Mo. App. 447; Bell v. Mulholland, 90 Mo. App. 618.   (2)·  As an insurance company makes its own conditions in its policy, they will be interpreted most strongly against it.   Renshaw v. State Mutual, 103 Mo. 595.   (3)   Under the pleadings and the evidence the judgment was properly for the plaintiff.   The premium was paid by an assignment of wages accepted by the railway company, and the wages duly earned passed by the assignment to the defendant insurance company and became its property.   Lyon v. Ins. Co., 55 Mich. 141, 20 N. W. 829; Fidelity & Casualty Co. v. Johnson, 72 Miss. 333, 17 So. 2; Eury v. Ins. Co., 89 Tenn. 427, 14 S. W. 929.

STATEMENT.

This action was brought by plaintiff against defendant on an accident policy of insurance. The facts upon which it is founded may be summarized in about this way. Plaintiff is the widow of Seldon F. Brown, who, on April 20, 1902, was a machinist in the employ of the K. C., St. J. & C. B. Railroad Company in its shops at St. Joseph, Missouri, earning wages at $70 per month. On that day he applied to defendant company for insurance of a kind especially provided for persons employed in industrial pursuits, who, having no present means of payment of the premiums, are wage earners and which contemplates the payment of the premiums out of wages to be earned in the future. The employment of such persons being often only temporary and there being no basis for extending them credit, certain safeguards are provided to the company, as will be hereafter observed, against default in the payments of the premiums. The material portions of Brown's application are as follows:

"8. I am employed by K. C., St. J. & C. B. 9. My monthly wages are $70. 10. My class of risk under my occupation is agreed to be medium. 11. The amount of insurance against accidental death hereby applied for is $1,500. 12. The amount of weekly indemnity for totally disabling injuries not to exceed $7.50. 13. The premium to be paid by four equal monthly installments from my wages for the months of May, June, July, August, 1902, which shall *apply to the respective insurance periods, and that the policy shall be considered binding only for such insurance period as is covered by an installment of premium actually paid,* except as to the time fixed for payment of the first installment. 14. Total premium for the four periods, $15."

To provide for the payment of the premiums, Brown at the same time executed and delivered to de-

fendant the following order on the paymaster of the railroads therein named:

"Paymaster's Order Or Assignment

"For $15.    No. 564608.

"Chicago, Burlington & Quincy Railway Co.,

"K. C., St. J. & C. B. Railroad.

"For value received I hereby assign of my wages for the months below named, to the Pacific Mutual Life Insurance Company of California or its authorized general agents, the amount of four premiums for separate insurance contracts, as follows:

"First premium:    Three 75-100 dollars, to be paid and deducted from my wages for the month of May, 1902.

"Second premium:    Three 75-100 dollars to be paid and deducted from my wages for the month of June, 1902.

"Third premium:    Three 75-100 dollars, to be paid and deducted from my wages for the month of July, 1902.

"Fourth premium:    Three 75-100 dollars, to be paid and duducted from my wages for the month of August, 1902.

"The first premium being the premium for two months, the first insurance period under policy of insurance issued to me by said company and bearing even date and number herewith; the second premium being the premium for two months, the second insurance period under said policy; the third premium being the premium for three months, the third insurance period under said policy; and the fourth premium being the premium for five months, the fourth insurance period under said policy, all in accordance with the provisions and conditions of said policy and my application for the same.

"If default is made in the payment of any premium at its due date the policy will be void as respects the corresponding and all subsequent periods.

"In consideration of the acceptance of this order or assignment of wages, the undersigned hereby agrees that the same shall not be revoked, cancelled or annulled by notice to any one or otherwise.

"Occupation, machinist. Signature, Seldon F. Brown. Date, April 20, 1902. Where employed, St. Joseph, Missouri. Where you report, St. Joseph. Name of head of department, C. E. Lamb. What division, St. Joseph shops. Write applicant's name in full, plain.

"SELDON F. BROWN."

Thereupon and at the same time the defendant issued to said Seldon F. Brown the policy now sued on, reciting that, "in consideration of the warranties in the application for the policy, and of an order which is to be considered an assignment of money therein specified on the paymaster of the Kansas City, St. Joseph & Council Bluffs Railroad," it thereby insured "Seldon F. Brown of St. Joseph, Missouri, the person named in the application *for the period or periods hereinafter specified,* beginning at 12 o'clock noon, standard time of the day, this policy is dated. Against bodily injuries sustained through external, violent and accidental means and will pay to him if surviving, or to Myrtle Brown his wife, or in the event of her prior death, to the executors, administrators or assigns of the insured, the indemnity provided in the schedule hereinafter contained, styled:

"Death and Disability.

"(a) If death shall result from such injuries within ninety days, independently of all other causes, the company will pay the principal sum of $1,500 which payment shall terminate the policy and discharge the company."

After providing indemnity for certain other losses, such as loss of limb, sight or loss of time, etc., the policy proceeds.

"Subject to the following agreements as conditions:

"10.    The payments made in the order or assign-ment are premiums for separate and consecutive per-iods of two, three and five months, and each is to apply only to its corresponding insurance period.   All claims for injuries received during any period for which the respective premium shall not have been act-ually paid shall be forfeited to the company.

''Except that in case of just claim before the first premium is due, if the sum due the insured be less than the sum of all the payments called for by the order or assignment, the amount of the claim shall be cred-ited thereon; if greater, the order or assignment shall be receipted in full and the balance paid to the in-sured.   In making settlement for any claim for in-juries received during any insurance period for which the premium has been paid, the amount of the pre-mium for later unpaid periods may be deducted from the amount found due.

"11.    In case the insured shall fail to leave in the hands of the paymaster, any installment of premium as it shall fall due as agreed in order, this policy shall be void.''

The policy is dated April 20, 1902.

No money was paid to defendant by plaintiff in the transaction.   So far as the premium is concerned the sole consideration for the issuance of the policy was the agreements contained in the paymaster's order which was on or about April 20, 1902, deposited by de-fendant with the paymaster of the railroad and left in his possession for his use as a voucher against the deductions authorized by Brown in his order, to be made by the paymaster out of said wages.

It will be noted by reference to this order that by its terms the first deduction and payment of premium was to be made out of the wages for May, 1902.   Brown worked that month for the railroad company but the custom of the company was not to pay the wages on the last of the month but on the tenth day of the month

succeeding the month in which they were earned unless the employee desired to quit the service, in which case he could receive his wages at any time he demanded them. So that in this instance Brown's wages earned in May were not payable until June 10th, on which date the paymaster gave him a check dated June 1st for $52.47 covering his May wages less $3.75, the amount of the first premium payable to defendant out of the May wages. This sum was remitted by the paymaster to defendant and was received by it in due course. There is, therefore, no dispute as to the premium having been paid for the first insurance period commencing April 20, 1902, and ending June 20, 1902.

Brown continued to work for the railroad at St. Joseph until June 28th when he quit the service and asked for his "time," that is to say, his wages, earned up to that date, and on that date the paymaster issued to him what is called a "time check" showing in detail the number of hours worked by him, the price per hour and the total sum due him from the railroad company on account of wages. This time check shows that he worked in June, eight and one-half hours at twenty-two and one-half cents per hour, did 177 and one-half hours piece work, for which $45.29 was due him, that on account of his leaving the employ of the railroad fifteen cents was returned to him, being his contribution to the relief fund maintained by railroad employees for medical and hospital service and that the total sum due Brown on June 28th was $47.35. Appended to this "time check" was his receipt for that amount. Said time check and receipt were read in evidence and are as follows:

"Form 4335.

"Department No. 411.          Paymaster's No. 18372.

"Hannibal & St. Joseph Railroad.

"St. Louis, Keokuk & Northwestern Railroad.

"Chicago, Burlington & Kansas City Railroad.

"Chicago, Burlington & Quincy Railway Co., Lessee.

"St. Joseph, Mo. 6-28-1902.

"This certifies that S. F. Brown has worked in the month of June as machinist at St. Joseph, Mo.,

"8 1-2 hours at 22 1-2c per hour.....$   1.91
"Relief fund contribution returned...      .15
"177 1-2 hours P. W................      45.29
"Balance due .......................      47.35

"Correct:   C. M. Mason.

"Approved:   C. E. Lamb.

"Received payment for services rendered as above stated.                    (Sign here.)   S. F. BROWN.

"This time check when properly indorsed is payable only to party named hereon by agent at ——. Paymaster who will remit receipt as cash when stamped with station stamp.          J. H. STURGIS,

"Asst. Treasurer."

This check was cashed by the paymaster for Brown on June 28th, the day it was issued, and Brown received the money therein shown to be due him. Time checks of this kind were only used by the railroad company in those cases where the employee was quitting the service and had asked for his wages before they were regularly payable.

It stands admitted that when Brown quit work on June 28th he drew all his wages, leaving nothing in the hands of the paymaster with which to pay the premium due out of the June wages and that premium and all subsequent premiums have never been paid. After drawing his wages, on or about July 1, 1902, Brown left St. Joseph and defendant heard nothing further from him and knew nothing as to his movements or whereabouts until it was notified by plaintiff that her husband had met with an accident on August 5, 1902, and that he had died on August 6, 1902, at Chickasha, Indian Territory, where it seems he had gone upon his removal from St. Joseph and where he was in the employ of another railroad.

The customary method of defendant of collecting

the premiums on policies of this kind was at the end of each month to send to the paymaster a memorandum showing the names of employees who held policies of this kind, the amount of the reduction to be made from the wages of each and for what month. This memorandum was called a deduction list. If the employee had funds to his credit the paymaster made the deduction and remitted the proceeds to the defendant's general agent at Chicago. It was the custom of the insurance company to send this deduction list to the railroad company on or before pay day which, as already stated, was on the last of each month succeeding the month in which the wages were earned. The June list was sent to the paymaster the last of June, but Brown had already on June 28th quit the service and withdrawn all money due him and the list was returned to defendant's general agent with the notation that Brown had quit the service and that nothing had been collected from him on account of this policy.

There was a trial before the court and at the conclusion of the evidence the defendant requested and the court refused to declare the law to be as follows:

"1. The court, sitting as a jury, finds that under the law and the evidence the plaintiff can not recover, and the verdict must be for the defendant.

"2. The court declares the law to be that neither the execution and delivery to defendant by insured of the paymaster's order, nor its acceptance by defendant, nor the earning of wages during June, 1902, by insured, nor all of these facts combined constituted absolute payment by insured of the installment of premium payable out of his June wages, nor any subsequent installment, but constituted only a conditional payment, that is to say, that such order amounted to payment only upon condition that insured, if he earned wages during June, July, and August, 1902, and should leave of said wages in the hands of the paymaster, an amount of

money sufficient to pay the installments of premium due and payable out of the wages for those months respectively and said respective installments should be actually paid to defendant; and if the court finds from the evidence that on or about June 28, 1902, insured drew and received from the railroad companies, or either of them mentioned in said order, all of the wages earned by him during June, 1902, and quit their employ without leaving in the paymaster's hands any funds with which to pay said installment of premium due out of said June wages, and that said June, 1902, installment and the subsequent installments were not actually paid to defendant out of the wages of insured, or from any other source, then plaintiff can not recover in this case; and defendant was under no obligation to notify insured that his installments of premium, or any of them, were due and unpaid, or to return said paymaster's order to insured.

"3.   The court declares the law to be, that if Seldon F. Brown worked for the railroad companies, mentioned in the paymaster's order, during the month of June, 1902, and earned wages from said companies during said month, and if he, on or about June 28, 1902, quit the employ of said companies and received said wages from said companies in full and did fail to leave in the hands of the paymaster of said companies any money with which to pay the installment of premium, payable out of said June wages, and if installment of premium and all subsequent installments of premium have not been paid, then plaintiff can not recover notwithstanding defendant and said railroad companies did not notify said Brown or plaintiff that said June installment had not been paid, or return said paymaster's order to insured.

"4.   The court declares the law to be, that when Seldon F. Brown drew and received from said railroad companies the wages earned by him during the month of June, 1902, he was bound to take notice of the fact

that he had not left in the hands of the paymaster of said railroad companies, or either of them, sufficient money with which to pay the installments of premium, due and payable out of his June wages and neither defendant nor said railroad companies were bound or required to notify said Brown that he had not left in the hands of the paymaster sufficient money with which to pay said installment.

"5. The court declares the law to be that the policy issued to Seldon F. Brown, by defendant, was issued to him subject to the condition that if he should fail to leave in the hands of the paymaster of the railroad companies mentioned in the paymaster's order sufficient money to pay any installment of premium as it should fall due, as agreed in said order, then the policy should be void and said condition was valid and binding upon said Brown and upon plaintiff.

"6. The court declares the law to be that under the evidence the policy issued to Seldon F. Brown ceased to be operative on and after June 20, 1902, and did not insure plaintiff against bodily injuries, sustained after that date.

"7. The court declares the law to be that if the second premium of $3.75 payable out of June, 1902, wages of insured, was not actually paid to defendant out of said June wages, or in any other manner, or at any time, the policy ceased to be operative and lapsed on June 20, 1902, and plaintiff can not recover.

"8. The court declares the law to be that the execution of said paymaster's order, by insured and its delivery to defendant, and its acceptance by defendant, did not constitute a payment of all or any of the installments of premium therein mentioned, except under the terms and provisions of said policy, the application therefor and said order, and if Seldon F. Brown failed to comply with these provisions of said policy and order, which required him to leave in the hands of the paymaster of said railroad company in question,

money sufficient to pay the installment of premium, due out of his June, 1902, wages and said installment of premium has never been paid to defendant, then plaintiff can not recover.''

The plaintiff had judgment and defendant appealed.

SMITH, P. J.—The policy sued on by its express terms became operative on the twentieth day of April, 1902, and the deduction and payment by the railway company to defendant of $3.75 out of the wages earned by the assured for the month of May, in accordance with the latter's order, kept the policy alive for the next two months ending the twentieth of June, 1902. The accident to the assured resulting in the loss of his life did not happen until the sixth day of August, which was after the expiration of the first two months' period covered by the policy. The assured made default in the payment of the premium for the second period, or for the two months beginning June 20th and ending August 20th. The policy provided that if default be made in the payment of any premium at its due date the policy should be void as respects the corresponding and subsequent periods. It also further provided that in case the assured should fail to leave in the hands of the railway paymaster any installment of premium as it should fall due, as agreed in said order of assured to said paymaster, that the policy should be void. And as has already been seen, the policy further provided that the premium for the four distinct periods was to be paid by an equal number of installments from the wages of the assured for the months of May, June, July, and August, and should apply to the respective insurance period and that the policy should be considered binding only for such insurance period as should be covered by an installment of premium actually paid except as to the time fixed for the first installment. It is in effect conceded that neither the

assured himself, nor the railway company acting under his order, paid defendant any other installment of said premium except that for the first period ending June 20th. It is as clear as anything can well be that the policy was not alive and operative at the time of the accident to the assured, and it would seem that the defendant's demurrer to the evidence should have been sustained rather than denied.

But the plaintiff insists that since it appears from the evidence that the assured worked for the railway company during the month of June and had earnings in its hands on the twenty-eighth of that month amounting to $47.35, that it was the duty of that company to deduct from the amount so in its hands the sum of $3.75 and apply the same to the payment of the premium for the second of said insurance periods. It is not denied but that when the assured quit the service of the railway company that it presented to him for his examination and signature a voucher which showed the number of hours he had worked that month —June—and the price paid per hour therefor, and the aggregate amount of wages to which he was entitled. This voucher disclosed to him that no deduction had been made by the railway company for the purpose of paying to defendant the premium due for the second insurance period. The statements contained on its face showed that he was then receiving the whole amount of wages that he had earned during that month and that there had been no deduction from the same. He must, therefore, be conclusively presumed to have known when he signed this voucher and received the amount it showed that he was entitled to, that no part of his wages for that month had been withheld, and that the premium then past due for the second insurance period was not paid. He therefore had actual notice that he was in default in payment of the premium for the second period of insurance and as he could not have been prejudiced by the failure of the

railway company to give him notice of a fact of whose existence was as well known to him as to it.

The proof of the self-serving statements made by the assured to a friend, after he had quit the employment of the railway company and received the whole amount of wages earned by him in the month of June, to the effect that his accident insurance was the best thing he had ever taken out and that he intended to keep it up, was wholly inadmissible for any purpose.

In no view of the evidence which we are able to take can we conclude that the mere fact that the assured earned an amount of wages during the month of June in excess of the amount of the premium due by him for the second period of the insurance and that the amount of such premium was not deducted by the railway company and paid over to the defendant, amounted to a constructive payment of the premium due for the second period of insurance. The assured knowingly failed to leave in the hands of the paymaster of the railway company the second installment of premium when it fell due as was agreed in his order on the said railway company, therefore, according to the plain terms of the eleventh clause of the policy it was thereby rendered void.

We are unable to agree to the further contention of the plaintiff that the order given to the defendant on the railway company, and the acceptance thereof by the latter, constituted an unconditional assignment of $3.75 of the amount of the wages that should be earned by the assured and in the hands of the railway company for each of the months mentioned in the said order, because, as already shown, the policy by its express terms provided that in case the insured failed to leave in the hands of the paymaster any installment of premium as it shall fall due, as agreed in said order, the policy should be void. It is thus seen by the very terms of the contract of insurance that the right was reserved to the assured to forfeit the policy at the end

of any insurance period by demanding and receiving from the railway company all the wages then due him, and thereby "failing to leave in its hands the install-ment of premium then due." Under the contract of in-surance the right of the assured to continue the policy from one period through another was entirely optional with him. He was not bound to carry the policy through the second or any other of the periods named in the policy whether he wanted to or not. The order was then but a conditional assignment. Such assign-ment was upon the express condition that the assured continued in the service of the railway company earn-ing wages equal to the amount of the premiums as they severally fell due and left such amount in the hands of such railway company to be applied by it to the payment of such premiums. The application, order and policy all relate to a single transaction and constitute but a single contract which can not be fairly and reasonably construed to mean anything other than that the order was but a conditional assignment.

The instructions hereinbefore set forth are, as we understand it, correct in expressions of the law.

There are a number of cases cited in the defend-ant's brief, the rulings in which we think fully support the conclusions which we have reached. It results that the judgment will be reversed. All concur.