[No. 8306.   Department One.   April 29, 1910.]

MARGARET GILMORE, *Respondent*, v. CONTINENTAL CASUALTY COMPANY, *Appellant*.[1]

INSURANCE — ACCIDENT INSURANCE — PAYMENT OF PREMIUMS BY AGENT—DEATH OF ASSURED—TERMINATION OF AGENCY—FORFEITURE OF POLICY. The agency of a railroad company for its employee carrying accident insurance, for the purpose of paying the premiums out of earnings, is terminated by the death of the assured employee, so that an erroneous return by the company made after the death, representing that nothing was due the employee and that the policy had lapsed, is not binding upon the beneficiary and does not work a forfeiture of the policy.

SAME—PAYMENT OF INSTALLMENTS—POLICY—TIME FOR PAYMENT. An accident policy, insuring a railroad employee, the premiums to be by the railroad company deducted and promptly paid out of the assured's wages, and which fixes no specific time for the payment of the premiums, requires only that they be paid within a reasonable time; and a delay of three days after the end of the month is not unreasonable; nor would there be any default in payment of an installment where it was understood that the same was to be paid on pay day at the latter end of the succeeding month, and the assured was killed before pay day.

Appeal from a judgment of the superior court for Spokane county, Carey, J., entered April 26, 1909, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action on an accident insurance policy. Affirmed.

[1]Reported in 108 Pac. 447.

*Roche & Onstine (Manton Maverick,* of counsel), for appellant.

*Plummer & Latimer,* for respondent.

FULLERTON, J.—On September 16, 1907, the appellant issued to one Nate Gilmore, a freight brakeman in the employ of the Northern Pacific Railway Company, an accident insurance policy, whereby it promised, among other things, to pay to the respondent the sum of one thousand dollars in case of the death of the assured by accident during the life of the policy. The life of the policy was fixed at one year, subject to lapse for the nonpayment of any premium installment. The assured did not pay any part of the premium at the time of the issuance of the policy, but to provide therefor gave to the appellant the following order directed to the paymaster of his employer:

"Please pay for me to the Continental Casualty Company the sum of Forty and no-00 .... Dollars and charge the same against my pay account for services rendered or to be rendered by me.

"This order is given to provide for the payment on a policy of insurance for which I have this day made application, and you are authorized and requested to pay the said sum in installments, as follows:

"1st installment of $10.00 to be paid from my wages for the month of October, 1907.

"2nd installment of $10.00 to be paid from my wages for the month of November, 1907.

"3rd installment of $10.00 to be paid from my wages for the month of December, 1907.

"4th installment of $10.00 to be paid from my wages for the month of January, 1908;

and further, at the option of the Continental Casualty Company, to pay any installment, payment of which has been defaulted, from any reason whatever, from my wages from any month thereafter succeeding. It is understood and agreed, with respect to these installments, (1) that if each and every one of them be promptly paid as above specified, then and in that event only, they shall pay for my insur-

ance under a policy to be issued to me by said company, bearing even date and number herewith, for respective periods, to wit: The first installment, two months; the second installment, two months; the third installment, three months; and the fourth installment, five months; in their successive order as herein given; (2) that said railway company is my agent for the purpose of making such deductions, and I will promptly notify its Auditor of Disbursements of any change in my employment, either as to class of service or location; (3) that I hereby release the said Railway Company from all liability on account of failure to make deductions arising from any cause whatever; and (4) that if for any reason whatever payment of any installment be not made as above specified then all my rights under said policy and the rights of my beneficiary thereunder shall at once terminate and be void. I hereby waive for myself and for my beneficiary under said policy any notice of payment or non-payment of said installments, and I agree that should default be made in any payment of the above specified installments and the defaulted installment be afterwards paid as provided above, then and in that event such payment shall reinstate only from the time of the receipt of such payment at the general office of the Continental Casualty Company.

"I agree that should I be discharged from or cease to be in the services of said Railway System before the first of said installments becomes due, then all my rights and rights of my beneficiary in said policy shall immediately cease, unless I notify the Secretary of said Continental Casualty Company in writing within three days after leaving said service, and remit said installment with said notice.

"I understand that no agent of the company has any authority or power to waive or change any of the printed provisions herein.

"In consideration of the acceptance of this order or assignment of wages by the above named railway company, the undersigned hereby agrees that the same shall not be revoked, cancelled, and annulled by notice to said railway company, or otherwise."

The appellant at that time was doing, and had theretofore done, a large insurance business with the railway company's employees, from each of whom it had received an order similar to the foregoing. It had also entered into an agree-

ment or understanding with the railway company by which the railway company had undertaken, for a consideration of five per centum of the amount collected, to deduct from the wages of the several employees the premiums due for each particular month, and forward the same to the appellant. The practice of the appellant was to turn over to the railway company's auditor of disbursements the several orders as fast as they were received. Towards the end of each month it would forward to the auditor a list or statement showing the names of the several persons assured with the amount of premium due for that month, together with such other data as would enable the auditor to identify the persons named, and that officer would, when making up the accounts of the assured, deduct from their wages the amount of the premiums due and forward the amount to the appellant less the commission charged. The remittance was usually made about the twentieth day of the month succeeding the month the premium fell due.

This procedure was followed in the present instance. On receiving the order in September, the appellant forwarded it to the railway company's auditor of disbursements. Towards the latter part of October a statement was sent the auditor containing a list of the names of the employees of that company who held insurance in the appellant company, and from whom premiums were due out of their October wages. In this list was the name of the assured in question here. The statement showed ten dollars to be due from Gilmore for the month of October, and this sum was deducted by the auditor from Gilmore's October wages and forwarded the appellant, less the commission above mentioned, the remittance being made about the twentieth day of November. Towards the end of November the appellant forwarded to the auditor a similar statement, showing the amounts due on November premiums. This was duly received by the auditor, who returned it about the twentieth of the following month, after making up the November

accounts, without remittance on the claim against Gilmore; the reason for the failure to make the remittance the auditor expressed on the statement by the words "Lapsed. Nothing due." In the meantime the assured had been killed by accident while in the performance of his duty. His death occurred on December 3, 1907, several days prior to the time the auditor made his return to the insurance company, but whether the auditor knew of his death at that time the record does not disclose.

The method adopted by the railway company for keeping the time of its several employees and making payment of their wages is not made very clear by the record. It can be gathered therefrom,. however, that the trainmen's time, such as brakemen, was reported by the train conductor to the trainmen's timekeeper, who, after tabulating it, forwarded the tables to the auditor of disbursements. The conductor reported at the end of every run, usually by "railroad" mail, and owing to the distance of the conductor from the timekeeper, it frequently happened that the reports of the conductor of work performed on the last days of the month would not reach the timekeeper in time to be included in the timekeeper's report to the auditor, which latter report included only the conductor's reports received up to 12 o'clock noon on the first of each month. The effect of this was that frequently a part of an employee's earnings for one month would be carried over and paid by the auditor as earnings of the succeeding month. It was so with Gilmore's earnings for the months of October and November. He was working on extras which were not upon the railway time card and had no special time, but were run upon orders from station to station. He was paid on a mileage basis, both the distance traveled and overtime put in counting to make up the mileage. In October the assured made his last trip on the last day of the month, at which he earned $6.22. This sum was not turned in to the timekeeper in time to be reported as October earnings, and was consequently car-

ried into the November account. The only work the assured performed in November was on the last two days of the month, during which time he earned $10.43. This sum, likewise, was reported to the timekeeper too late to be included in the November earnings, so was carried to the December account. Thus the account as it appeared in the office of the auditor of disbursements in December, when he made the report of nothing due to the insurance company, showed only $6.22 to the credit of Gilmore.

There is a dispute in the evidence as to the amount of Gilmore's earnings in November, which may be well to notice here. The trial court found his earnings to be $10.43, and we have accepted the finding as true. It is supported by the evidence of the conductor with whom Gilmore operated and who reported his time to the timekeeper, and by the timekeeper who made up the time tables and turned them over to the auditor of disbursements. That officer, however, testifying for the insurance company, states that Gilmore's earnings for that month were only $9.92. His testimony, however, is in some respects unsatisfactory. For example, on cross-examination he gave the number of miles with which Gilmore was credited in November as 392, whereas, both the conductor who reported the mileage, and the timekeeper who tabulated it, say that he was credited with 413 miles, and no explanation of the difference is given. Again, he testifies that he had the account of Gilmore's November earnings at the time he reported to the appellant in December. In this he is not only contradicted by the timekeeper, but it forced him into another dilemma. If he had that account he also had the balance carried over from October which would have made more than enough, according to his own figures, to pay the insurance premium. To escape this he gave the earnings carried over from October as earnings for December, testifying that the amount earned by Gilmore in the two days of that month preceding his death was $11.40, whereas the conductor's time slips, as reported by

the timekeeper, show only $4.55 earned for these two days; that is to say, the conductor's and trainmen's timekeeper of the railway company make up the amount due Gilmore in the hands of the company at the time of his death in the following manner:

"Earnings in October, 1907............ $6.22
"Earnings in November, 1907........... 10.54
"Earnings in December, 1907........... 4.55

    "Total...........................$21.31"

Whereas, the auditor makes up the account by the following credits:

"Earnings in November, 1907........... $9.92
"Earnings in December, 1907........... 11.40

    "Total...........................$21.32"

It will be noticed that the auditor has not materially changed the totals as returned by the timekeeper, but has simply revamped the tables on which the totals are based. The auditor makes clear another matter also, namely, that he was in error in his report made to the appellant in December to the effect that there was nothing due the assured from the railway company, as the company had in its possession at that time, according to his present computation, more than double the amount necessary to liquidate the November premium.

After the death of Gilmore the respondent, as his beneficiary, obtained the necessary data and was proceeding to make proofs of his death and her right to the benefits declared in the policy, when she was notified by the insurance company's officers that the company denied any liability under the policy because of the nonpayment of the November premium. This action was thereupon begun, resulting in a judgment in her favor.

The appellant relies chiefly for a reversal of the judgment on the fact that the November premium was not paid. It

14—58 WASH.

argues that by the express terms of the paymaster's order, given it by the assured, the railway company was made the agent of the assured, and that in consequence any statement made by that company through its officers, whether true or false, was binding on the assured, so that when the auditor of the railway company returned to it the November statement of premium due, without remitting the amount thereof, it released the appellant from all liability under the policy. But this argument overlooks the fact that the death of the assured had occurred prior to the time this return was made. It is the almost universal rule that the death of the principal puts an end to the agency, the only exception thereto being the case where the agency is coupled with an interest. 2 Enc. L. & P. 1256. Therefore, at the time the return relied upon was made, the authority of the railway company to represent the appellant had ceased, and its statements and acts, although purporting to represent the assured, were no more binding upon the heirs of the assured, or the beneficiary entitled to his life insurance, than would be the statements of any person not having legal authority to represent his estate.

The rights of the parties under the policy of insurance must be determined by the conditions existing at the time of the assured's death. If at that time he was in default in the payment of any installment of premium owing upon the policy, then, clearly, the beneficiary under the policy cannot recover thereon. On the other hand, it is just as clear that if there was no default at that time there is such liability. This question must be determined by the terms of the contract between the appellant and the assured.

By reverting to the paymaster's order, which was made to supersede the condition expressed in the policy with reference to payments of premiums due, it will be observed that no definite time is fixed for the payment of any one of the installments provided for. The only requirement is that they shall be paid promptly out of the assured's wages for a

particular month. This, without further limitation or understanding, would mean that the assured, through his agent, had a reasonable time within which to make the payment. But we think a definite time of payment was implied by the agreement of the parties in this instance. Both the assurer and the assured were acquainted with the system adopted by the assured's employer for making payment to its employees. It was understood that the earnings of the employee for any particular month would not be paid until the latter end of the succeeding month, and that no remittance would be made on the premium until pay day arrived, even though funds were in the hands of the employer applicable to that purpose on the first day of the succeeding month. It must follow therefrom that there would be no default until pay day arrived. But the right to recover may rest on either ground stated. Since the premium was to be paid out of the earnings of a particular month, in the absence of an agreement fixing a definite time for the payment, a delay of three days after the end of the month would not be an unreasonable delay, and, since the assured was killed before the end of such third day, there could be no default in the payment at the time of his death.

The appellant contends further that the assured was in default if his earnings for the month of November in the hands of his agent at the time of his death were not sufficient to pay the premium for that month, and he argues that the evidence shows that such earnings were insufficient. But we have adverted to the evidence and findings in this respect, and have reached a contrary conclusion therefrom than that reached by the appellant.

The judgment is affirmed.

RUDKIN, C. J., GOSE, and CHADWICK, JJ., concur.