GEDDES v. ANN ARBOR RAILROAD EMPLOYEES' RELIEF ASSOCIATION.

1. INSURANCE—MUTUAL BENEFIT ASSOCIATIONS—DEFAULT.
   Where an employee of a railroad corporation became a member of its relief association by applying for insurance against sickness and accident, and in so doing gave written authority to the railroad company to deduct from his wages the monthly premium required for his insurance under the policy, as it became due and payable, and where he afterwards became ill and received his

wages in full during his absence, without making any payments, and it appeared that through an error in the auditing department the employee's name had been marked so as to indicate that he had no wages due from which deduction could be made, a provision of the policy that if any member failed to pay his premium when it was due, the insurance should cease, controlled the liability of defendant, and the insured lost his rights under the policy by failing to see that his premium was kept up: his wages being fixed, he was chargeable with notice that no deduction had been made by the employer, and in the absence of a provision imposing upon it the duty of attending to the payment of premiums, an assignee after the death of insured could not recover on the policy.

2. SAME—CUSTOMS—BENEFIT POLICY.

The rule or custom of a mutual benefit association to deal leniently with members that became sick or disabled, could not be held to aid the plaintiff who had not paid any premiums from his wages before his disability occurred, receiving the full amount without deduction before he became sick: nor was he entitled to notice of the default.

OSTRANDER, KUHN, and BIRD, JJ., dissenting.

Error to Washtenaw; Kinne, J. Submitted November 4, 1913. (Docket No. 59.) Decided January 5, 1914.

Assumpsit by Warren Geddes against the Ann Arbor Railroad Employees' Relief Association on a policy of health and accident insurance. Judgment for plaintiff. Defendant brings error. Reversed; new trial refused.

*Seth Q. Pulver*, for appellant.

*Dewey M. Forshee (Carl Storm*, of counsel), for appellee.

Plaintiff sues defendant as assignee of a claim of the estate of one Ralph L. Westerland, against defendant. It appears that on October 31, 1908, West-

erland was an employee of the Ann Arbor Railroad. On that day he secured a policy of insurance in the defendant association. His application contained the following order and agreement:

"I hereby authorize the Ann Arbor Railroad, by whom I am now employed, to deduct from my wages the monthly premium required for my insurance under said policy, as such premium shall, from time to time, become due and payable, and I understand and agree, that each such premium shall apply only to its corresponding insurance period of one month, and that the insurance shall be good only while I remain in the employ of the said Ann Arbor Railroad Company, and while the said monthly premium shall be punctually and fully paid the said Relief Association as required by the conditions of said policy, and I hereby accept the insurance applied for thereunder, subject to all agreements, conditions and limitations therein contained, and I further agree that this application cancels any previous policy issued to me by the above named Association."

The policy issued to Westerland contained this provision:

"If a member shall fail to pay any monthly premium when due, or shall leave the service of the A. A. R. R. or of the R. R. System of which the A. A. R. R. may form a part, or shall accept leave of absence to engage in other business, insurance shall immediately cease and this policy become null and void; provided, if for reasons beyond the control of the insured, premiums are not collected when due, insurance shall continue and premiums be due and may be collected at the rate of two assessments per month until paid."

The policy was indorsed upon its face as follows:

"READ YOUR POLICY.
"THE ANN ARBOR RAILROAD EMPLOYEES' RELIEF
· ASSOCIATION.
"POLICY.
"Mr. Ralph Westerland.
"Employed as Clerk.

"Place, So. Frankfort.
"Policy No. 7070.
"Accident benefit premium, $.25.
"Sick benefit premium, $.50.
"$.75 out of wages monthly."

Westerland was employed as a call boy by the Ann Arbor Railroad at a fixed salary of $25 per month. He continued to work from October, 1908, to some time in February, 1909, when he fell ill. He returned to work for about one week in April, 1909, again fell ill, and died of pulmonary consumption on August 7, 1909. After his insurance became effective, he received his pay check from the railroad for the full sum of $25 for each of the months of November and December, 1908, and January, 1909. These checks were cashed by him. It is undisputed that no deduction was made by the railroad company and turned over to defendant to pay his insurance assessments, and it is likewise undisputed that he never paid any one of said assessments in any other way. It appears that the secretary-treasurer of the defendant association made out each month what is called a deduction sheet and forwarded it to the auditing department of the railroad company. Commencing with the month of November, 1908, he included the name of Westerland in the list of names upon said sheet with the amount to be deducted set opposite thereto. Through some error in the auditing department the sheet was returned to the secretary-treasurer with the notation, "No time," inserted opposite Westerland's name. This notation the secretary understood to mean that Westerland had no wages due from which the deduction could be made. After carrying the name on the deduction sheets for three or four months and receiving them back in each instance with the same notation, "No time," opposite Westerland's name, the secretary dropped the name from the list, assuming that Westerland had left the employ of the railroad.

In May or June, 1909, the defendant learned of Westerland's illness, and it at once set up the claim that he was not a member of the association, never having paid any of the assessments provided for in his policy. While the collection of assessments from policy holders was usually made through the auditor's office of the railway company, a few of those insured made payment thereof directly to the secretary of the defendant association.

We are unable to discover from an examination of the application, the policy, or the by-laws of defendant that the railroad company was under any contract or obligation to deduct the assessments from the wages of the insured and forward them to the secretary of defendant. The contract between the insured and the defendant does not make it the duty of defendant or its officers to see that the deductions are made. In the court below a verdict was directed in favor of plaintiff for $160, that sum being made up of the death indemnity of $100 and the weekly indemnity for sickness from the time notice was given until the death of the insured. A deduction of $8 was made on account of the unpaid premiums.

BROOKE, J. (after stating the facts). It is the contention of defendant that its motion for a directed verdict should have been granted.

Plaintiff relies entirely upon the case of *Lyon* v. *Insurance Co.*, 55 Mich. 141 (20 N. W. 829, 54 Am. Rep. 354). We are of opinion that that case is distinguishable and not controlling. There the insured, a brakeman, was earning variable wages, so that he might be excused for a failure to notice that no deduction from his pay had been made, while in this case Westerland was working for a fixed salary, and the fact that his premiums were not deducted could not well have escaped his attention. Again, in the *Lyon Case* there was an assignment by the insured

to the insurance company of so much of his wages as was necessary to pay the premiums. There was no such assignment in the instant case. There was an authorization to the railroad company to deduct the premiums, but the defendant company was given no interest therein by assignment.

It is the claim of plaintiff that it was defendant's duty to see that the premiums were collected so long as the insured did not revoke the order for payment and had earned sufficient to cover the premiums. A sufficient answer to this claim is that the policy contract contains no such provision. The contract provides that:

"If a member shall fail to pay any monthly premium when due, * * * insurance shall immediately cease and this policy become null and void."

It is plaintiff's further claim that Westerland was entitled to notice from defendant that his premiums were not paid. Again, the contract imposed no such duty upon defendant; but, if it had, notice would have been unnecessary because Westerland had actual knowledge of the fact. He knew that he was earning a fixed sum each month, and he knew that he drew that full sum each month. Under the facts, he must be charged with knowledge that nothing remained in the hands of the railroad company out of which the premiums could be paid. It was said in *Pacific Mutual Life Ins. Co.* v. *Walker*, 67 Ark. 147 (53 S. W. 675):

"Under no reasonable view of the law would Walker be allowed to hold the insurance company responsible for the nonpayment of his order when he left no funds out of which it could be paid."

See, also, *McMahon* v. *Insurance Co.*, 77 Iowa, 229 (42 N. W. 181); *Landis* v. *Insurance Co.*, 6 Ind. App. 502 (33 N. E. 990); *Employer's Liability Assurance Corporation* v. *Rochelle*, 13 Tex. Civ. App. 232 (35

S. W. 869) ; *Bane* v. *Insurance Co.*, 85 Ky. 677 (4 S. W. 787).

The defendant is a purely mutual organization designed to furnish protection to its members at cost. It has but two paid officials, the secretary-treasurer and his assistant, who are respectively paid the nominal salaries of $30 and $10 per month. The record indicates that it was the policy of defendant to deal leniently with its members, and that it did not forfeit policies for nonpayment of the premiums while the insured was sick or disabled. This rule or custom cannot avail plaintiff, however, for, during the first four months of the life of the policy Westerland was under no disability, there were no "reasons beyond the control of the insured" to prevent the payment of premiums. It was clearly his duty during those months to have paid his premiums, and, not having done so, it seems to us that it would be a gross imposition upon his fellow members to compel them to pay over to the assignee of his estate and beneficiary the sums claimed.

The judgment is reversed, and there will be no new trial.

McALVAY, C. J., and STONE, MOORE, and STEERE, JJ., concurred with BROOKE, J.

OSTRANDER, J. I cannot distinguish this case and *Lyon* v. *Insurance Co.*, 55 Mich. 141 (20 N. W. 829, 54 Am. Rep. 354), and therefore think the judgment should be affirmed.

KUHN and BIRD, JJ., concurred with OSTRANDER, J.