(78 South. 392)

## CONTINENTAL CASUALTY CO. v. VINES.
(6 Div. 647.)

(Supreme Court of Alabama. Feb. 7, 1918. Rehearing Denied April 4, 1918.)

1. INSURANCE ☞349(2) — LIFE INSURANCE — CREDIT.

Where life policy made first day of each month due date for premiums, insurer's permitting insured to give order on paymaster for premiums to be deducted from pay on later date was extension of credit until such later date.

2. INSURANCE ☞349(2) — LIFE POLICY — AGENCY.

Where policy to be paid for by pay orders on paymaster of insured's employer expressly constituted paymaster insured's agent, and insured in such order assumed risk of derelictions of paymaster, omissions of servants of his employer other than the paymaster were not imputable to him.

3. INSURANCE ☞349(2)—LIFE POLICY—FORFEITURE.

Where life policy and order on paymaster of insured's employer operated to extend credit to insured from first of month when premium was due until regular pay day, and insured died in interval between such dates, there could be no

forfeiture for nonpayment of premium on first day; the paymaster as an agent having no interest in the subject-matter.

4. INSURANCE ☞654½—EVIDENCE—ADMISSI-BILITY.

In action on life policy under which order on paymaster of insured's employer for monthly premium was given, evidence as to insured's monthly earnings was admissible as going to show that insured continued in his employment until his death.

5. INSURANCE ☞661 — EVIDENCE — ADMISSI-BILITY.

In absence of evidence that second policy was in force when insured died, such policy was not admissible in action on first policy for the purpose of proportioning indemnity.

6. WITNESSES ☞196—PRIVILEGED COMMUNI-CATIONS—CONTRACTUAL RELATION.

In action on one life policy, agent who wrote another policy could not, in view of contractual status, testify that insured made statements to him regarding policy in defendant insurer.

Appeal from Circuit Court, Jefferson County; H. A. Sharpe, Judge.

Action by A. A. Vines, as administrator, against the Continental Casualty Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Most of the facts sufficiently appear. The assignments of error referred to in the opinion are as follows:

(2) Overruling objections of appellant to the following question and answer directed to the witness Emma Love:

"Q. How much was Love's average monthly wages? A. $95 per month."

(3) Overruling appellant's motion to exclude the answer to the above question.

(4) Overruling appellant's objection to the following question and answer to same witness:

"Q. Did he work regularly during the month of May? A. Yes, sir; he worked regularly."

(5) Overruling motion to exclude the above answer.

(6) Overruling appellant's objection to the following question and answer to the same witness:

"Q. Was he in the regular employment of the company up until the time of his death? A. He was."

(11) Overruling appellant's objection to the following question to the witness Carter: Same question and answer as in assignment 2.

(12) Overruling motion to exclude the answer.

(13) Overruling appellant's objection to the following question to the witness Carter: Same question and answer as in assignment 4.

(14) Overruling motion to exclude the answer.

M. P. Cornelius, of Chicago, Ill., and Stokely, Scrivner & Dominick, of Birmingham, for appellant. James M. Kidd, of Birmingham, for appellee.

McCLELLAN, J. The plaintiff, appellee, was accorded a judgment upon an accident insurance policy issued by the defendant, appellant, to the plaintiff's intestate, Tom Love. Love was in the employ of the Seaboard Air Line Railway Company. On June 9, 1915, he lost his life when the engine on which he was serving was derailed. The application for the policy was made on January 14, 1915, and the policy was dated correspondingly. Accompanying the application, Love gave the insurer an order to the pay-master of Love's employer, requesting that official to pay to the insurer installments out of certain monthly earnings of the insured. The installments contemplated by this pay order were not paid to the insurer; but, subsequently, on April 27, 1915, Love gave to the insurer another pay order wherein the employer's paymaster was requested or directed to pay to the insurer the annual premium, viz., $42.80, in five installments as follows: $8.55 from Love's wages for the months of May, June, July, and August; and $8.60 from his wages for the month of September, 1915. Love remained in the service of the railway company from the time he gave the second pay order until his death on June 9, 1915. The pay order, which constituted a part of the contract, and the application, also a part of the contract, provided that, if any payment (installment) was not paid when due, all rights under the policy should cease. In the April pay order it was stipulated to a like effect, and, additionally, that the paymaster was the insured's agent for the purpose of deducting these installments from his wages, and that the paymaster's action in that regard should be entirely at the risk of the insured.

The insurer did a considerable business with employés of this railway company; and the premiums promised by the employés insured were customarily divided into monthly installments, and the paymaster of the employer requested or directed to pay such installments to the insurer. The practice was that the insurer would make up a list of employés of the railway company from whom it held pay orders, and this list or billing was sent to the railroad company each month for deduction to be made from that month's earnings of the insured. The railroad company would receive the list, and, if the employé had earned wages throughout the month, would, during the first week of the succeeding month, make up a pay roll which in due course would be sent to the paymaster at Portsmouth, Va. If there was not sufficient time to the credit of the employé to satisfy the requested deduction for an installment of the insurance premium, or for any other reasons the deduction in favor of the insurance company was not made, this fact was indicated on the billing opposite the name of the employé and the billing was returned to the insurance company. Without regard to the effect of Love's failure to pay the installment noted in the first pay order, it is very clear that the second pay order, of April 27, 1915, restored the contract of insurance in so far as it is involved in the determination of the main question presented by this appeal. The first installment under this second pay order was to come from the earnings of Love during the month of May. Before the end of May the billing sent to the railroad company included the name of Love.

Love earned wages throughout the month of May to the amount of $91.60; but no deduction in favor of the insurer from Love's May wages was made, the entire earnings for that month being absorbed in deductions in favor of one Darden, who operated a commissary. The billing was returned, some time later in June, after Love's death, to the insurance company. The pay day of the company known to both of the parties to this insurance contract, was the 18th of each month; and under this custom the earnings of employés for May was payable on June 18th—a date approximately nine days subsequent to the death of Love. No premium installment was ever paid by or for Love on account of this policy.

[1] The main question presented is whether Love was at the time of his death in default in the payment of the installment out of his May wages; for, if so, the insurer was not liable on the policy. The trial court held that credit was extended to Love up to the pay day of the railroad company and that this policy did not lapse until that pay day. The pay order, by the authority of which deductions from the insured's monthly wages might be made in favor of the insurance company and in discharge of the railroad company's liability to its employé, did not fix any definite date upon which the monthly installments should be payable or be paid. The source from which each installment should come was stipulated; but, in view of the known, customary monthly pay days of the employer, it was quite reasonable for the parties to omit to specify any definite date when the installments should be paid. Under these circumstances, the implication must be that the parties intended that each monthly installment should be paid upon the customary pay day of the employer next succeeding the month during which the wages were earned; thus and thereby extending to the insured a credit for the period intervening between the end of the month and the customary pay day of the employer of wages earned during the preceding month. If the parties had intended to ground a forfeiture of the insured's policy in a failure to pay each installment immediately upon the expiration of the preceding wage month, surely that purpose would have been expressed in some definite form; for such an arrangement would have involved a change in what all parties knew was the employer's practice in respect of the time it would satisfy the dues of wage earners in its service. Like considerations forbid the acceptance of the suggestion that default intervened, avoiding this policy, when the time-keeping agents of the employer—not the paymaster upon whom the authority to deduct was conferred by the pay order—prepared their report, about June 5th to be forwarded to the paymaster; it appearing from the evidence that the authority and duty of the time-keeping agents of the employer did not comprehend the right to effect the payment of employés or to conclude upon the propriety or correctness of deductions from the wages of employés. Our conclusions on this phase of the case, confirmatory of the effect of the trial court's ruling in that regard, are in accord with those given approval in Gilmore v. Continental Cas. Co., 58 Wash. 203, 108 Pac. 447, a decision that impresses us as being thoroughly sound on the question hereinabove decided.

[2, 3] It is argued for appellant that any dereliction or default that may have intervened prior to the death of the insured, through the action or nonaction of the paymaster or other agent of the employer, must be imputed to the insured; for that the insured had, in the pay order of April 27, 1915, constituted the paymaster his agent "for the purpose of deducting these installments from my wages, and his action in that regard is entirely at my risk." It is manifest that the agency thus constituted was with respect to the paymaster only, and hence the action or nonaction of other agents or officials of the employer was not within the agency thus constituted. The paymaster's agency was terminated by the death of the insured on June 9, 1915—approximately nine days before the expiration of the credit period extending to the customary pay day of the employer—it not appearing that the authority of the agent was coupled with any interest in the subject-matter. 1 Mechem on Agency, § 652 et seq.; Weber v. Bridgman, 113 N. Y. 600, 21 N. E. 985; Gilmore v. Consolidated Cas. Co., supra. See Norton v. Whitehead, 84 Cal. 263, 24 Pac. 154, 18 Am. St. Rep. 172. Of course, upon the termination of the agency the erstwhile agent had no authority or power in the premises. Aside from these considerations, it would suffice to say, in view of the conclusion that the credit period extended beyond the date of insured's death, that default as a predicate for a forfeiture, not favored in the law, could not have intervened to forfeit the policy.

In the brief for appellant, it is stated with commendable candor that no case directly in point has been found to support the view urged for appellant. Of the cases noted on the brief for appellant, that of Lacy v. Continental Cas. Co., 170 Ill. App. 527, comes nearer supporting appellant's view than any other; but there the announcement in the pertinent particular was dicta. Since then Lacy, himself, "drew $17.37 from the Pullman Company, which sum was all the wages he had earned during the calendar month of April, 1907, and he earned no more wages in that month." There the employé had, himself, withdrawn the wages earned by him during the month from which the installment should have been paid; whereas, in the present case the insured had not, himself, drawn from his employer any of his wages earned during the month of May, 1915. As indicated, there are expressions in the opinion in the Lacy Case supporting appellant's view; but they do not impress us as being

sound, even though the decision in that concrete case may be unobjectionable. The facts in the cases of Ætna Life Ins. Co. v. Ricks, 79 Ark. 38, 94 S. W. 923; Brown v. Pac. Mutual Co., 109 Mo. App. 137, 82 S. W. 1122; Farrell v. Amer. Ins. Co., 68 Vt. 136, 34 Atl. 478; Geddes v. Ann Harbor Relief Asso., 178 Mich. 486, 144 N. W. 828—prevent their acceptance as influential in the decision of the question here presented. Our recent decision of Travelers' Ins. Co. v. Atkinson, 73 South. 903,[1] is without bearing on the case in hand. All that was there decided with reference to forfeiture of rights under the policy was that the employer could not pay an installment of premium out of any month's wages except the month which the insured, in the pay order, had specifically directed it should be paid. It was not there held that the insurer, himself, could not have otherwise paid the premium installment in question and thus have avoided the visitation of a forfeiture.

[4-6] Assignments of error 2 to 7, inclusive, and 11 to 14, inclusive, are without merit. The evidence with reference to the monthly earnings of Love was admissible as going to show that, pending the period intervening between the issuance of the policy and the death of Love, he continued, as the contract contemplated, in the service of the employer. The trial court was not in error in excluding the policy in the Pacific Mutual Life Insurance Company; it not being shown that the policy was in force at the time of the death of Love so as to operate, under the terms of the policy in suit, to proportion the indemnity promised by the policy in suit. In view of the contractual status existing at the time of the death of the insured on June 9, 1915, the court correctly declined to permit the witness Slack to testify that when he solicited Love's insurance in the Pacific Mutual Company Love made statements to him with reference to having a policy in the Continental Casualty Company.

No error appearing, the judgment must be affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.