# Standard Accident Insurance Company v. Smith.

(Decided March 14, 1919.)

## Appeal from Knox Circuit Court.

1. Insurance—Accident Insurance—Validity of Policy.—Provision in an accident policy that the policy would be void if the insured left the employment of the company without having earned sufficient wages to make the first payment, or if he collected or disposed of his wages so earned, not leaving enough to pay said premium, was valid and binding; so also the provision that the insured would not revoke, cancel or annul the order of assignment given to his employer to insure payment of the premium.

2. Insurance—Accident Insurance—Recovery Under Policy.—Where insured prior to the due date of the first installment of premium on an accident policy had not earned sufficient money to pay said first installment and had, by a subsequent assignment, withdrawn the money so earned and left the employment of the company, he so violated the provision of the policy that no recovery could be had thereunder.

BLACK & OWENS and O'NEAL & O'NEAL for appellant.

J. M. ROBSION AND S. H. CASH for appellee.

OPINION OF THE COURT BY JUDGE QUIN—Reversing.

The appellant issued to Harold B. Smith, April 20, 1916, an accident policy in the sum of $1,000.00 in consideration of a premium of $30.00, payable $5.00 per month from wages earned in the months of May to October, 1916, inclusive. Appellee gave to the company an assignment of his wages with his employer, the L. & N. R. R. Company, to secure the payment of same. In the order of assignment, which is made a part of the policy, it is provided that the first of the payments shall apply to the first insurance period of two months from the date of the policy, and the subsequent payments for a like period of time. This order of assignment contains this further provision: "I hereby agree that failure to deduct any of the above premium payments from any cause is at my risk, and if any premium payments be not deducted as above provided for, all my rights and the rights of my beneficiary under said policy shall be void at the termination of the last insurance period for which payment has been actually deducted from my wages, except in case of failure to deduct the first payment, in

which event the insurance shall cease at the termination of the month from the wages of which the first deduction should have been made. I hereby waive for myself and my beneficiary under said policy notice of non-payment of any premium and agree that no claim will be made for injuries sustained, nor for sickness commencing, during any period for which its respective premium has not been actually paid in full except that in case of a just claim for injuries sustained or sickness commencing before the end of the month from the wages of which the first premium is to be deducted. If I have left the employment of the employer above named without having earned in the month specified sufficient wages to pay said first premium, or have collected or disposed of wages earned in said month so as not to leave enough to pay said first premium, the policy shall be void from its date. Upon the payment of any claim thereunder any premium then due and unpaid or covered by any written pay-order may be deducted therefrom. I hereby agree that I will not revoke or annul this order of assignment by notice to said railway company or otherwise.''

Similar provisions are found in another portion of the policy.

Under an agreed state of facts, filed in the record, it appears that the insured quit the L. & N. R. R. Co. on May 4, 1916, without having paid that portion of the premium which was to have been taken from his wages earned in May, 1916. Insured came to his death during the night of May 4th, between dark of that day and daylight on the morning of May 5th. He quit work about 6 p. m. May 4th, giving as his reason for quitting the employment of the L. & N. that ''he had a better job.''

Under the employment of said insured with the railroad company the wages earned by him in the month of May were not due and payable until the 27th or 28th of the month, but the insured had given to the Y. M. C. A. of Louisville an order of assignment for all the money due him from the railroad company for services under his employment with it, which order of assignment was accepted and paid by the railroad company to the extent of his earnings, to-wit, $4.53. This order was given and accepted before the insured quit the employment of the railroad company.

This case was tried upon said agreed statement of facts, a jury being waived. The court rendered judgment in favor of the appellee, who is the mother of the insured and beneficiary under said policy, in the sum of $970.00, being $1,000.00, less $30.00, the amount of the premium called for in the order.

It is contended by the appellant, first, that the insured did not come to his death through external, violent or accidental means; second, the policy was not in force at the time of the death of the insured.

The conclusion we have reached as to the second proposition makes it unnecessary to consider the first. It will be seen from the provisions of the policy, and of the order of assignment, insured agreed that if (a) he left the employment of the company without having earned in the month specified sufficient wages to pay said first premium; or (b) if he collected or disposed of his wages earned in said month, so as not to leave enough to pay said premium, then the policy should be void from its date. And furthermore he agreed (c) that he would not revoke, cancel or annul the order of assignment by notice to his employer or otherwise.

From the statement of facts it is manifest the insured violated the provisions of the policy in each of the three foregoing respects. At the time of his death he had not earned sufficient wages to pay the first monthly premium; he had collected all wages earned by him to May 4th, when he quit, and he had, by an assignment on the Y. M. C. A., withdrawn the wages earned and thus violated the last provision above noted, in that he, by his act, annulled the order of assignment to his employer.

We have been unable to find any decision presenting a question precisely like this one, but in the following cases will be found kindred questions, though in every one of these the first periodical payment had been made and the default occurred in subsequent periods: Gilmore v. Continental Casualty Co., 58 Wash. 203, 108 Pac. 447; Reed v. Travelers Ins. Co., 117 Ga. 116, 43 S. E. 433; Aetna Life Ins. Co. v. Ricks, 79 Ark. 38; Rocci v. Massachusetts Accident Co., 222 Mass. 336; Stout v. Missouri Fidelity & Casualty Co., 179 S. W. 993; Hagins v. Aetna Life Ins. Co., 72 South Caro. 216; Landis v. The Standard Life & Accident Ins. Co., 6 Ind. App. 502; Pacific Mut. Life Ins. Co. v. Walker, 53 S. W. 675 (Ark.);

The Employers' Liability Assurance Corporation v. Rochelle, 13 Tex. Civ. App. 232; York v. Railway Officials & Employers Accident Association, 51 West Va. Rep. 38; Brown v. Pacific Mut. Life Ins. Co., 82 S. W. 1122; Sewell v. Continental Casualty Co., 92 Miss. Rep. 857; McMahon v The Travelers' Ins. Co., 77 Iowa Rep. 229; Travelers' Life & Accident Ins. Co. v. Cash, 14 Ind. App. 3; Fuller on Accident & Employers' Liability Ins., p. 21.

In Bane v. Travelers' Insurance Co., 85 Ky. 677, the court had under consideration a policy similar to the one now before the court. The premiums were to be paid in four installments of $5.00 each, during the months of January, February, March and April, and under the provisions of the policy, each of these payments covered insurance for the periods of two, two, three and five months respectively. The first two premiums were made by the insured, but he earned nothing during March and April; he resumed work on May 1st, and was killed May 28. On May 10th, more than $10.00 was due him and at the time of his death he had earned $47.70. The court reached the conclusion that the assignment given by the insured on his employer was not an assignment of $20.00 to be paid out of any money that might become due to the insured, but only $5.00 out of his wages for each of the four specified months, and the railroad company had no authority to pay the insurance company anything due the insured for the May wages, as there was no assignment covering that month. We quote as follows from the opinion: "It therefore makes no difference that when the second period of insurance expired the insured had a sufficient amount of wages owing to him by the railway company, for the month of May, to have paid the balance of the premium, or that this continued to be the case until his death. . . . By the express terms of the contract the insurance was to cease at the end of the second period if the premium for the third period was not paid.

"It is evident that the parties to the contract looked alone to the wages that were expected to become due from the railway company for the payment of the premium. It is unreasonable to suppose that the credit would otherwise have been given to the insurance company. Railroad employes, as a general thing, are transitory

persons, and it would be destructive of the accident insurance business as to them, if, by the mere giving of an order to the insurer, to be paid out of a fund to be earned by them in the future, they could compel the insurer to carry the insurance, although they should fail to work because they might not be hunted up and the order returned. In this instance the insured knew he had not earned the wages which he had assigned in order to continue the policy. If he had lived, and the insurance company had attempted to collect the balance of the order out of his May wages, could he not have claimed successfully that he did not transfer them, and that he had chosen to let the policy lapse? He knew that the expected fund had not been earned; that by the express condition of the policy its continuation depended upon payment in that way. The right of election was with him, and not with the company, under such circumstances. It was his duty, if he desired to continue the policy, to have paid the installments, and his failure to do so terminated the liability of the company.''

In Pritchett v. Continental Casualty Co., 117 Ky. 923, the court had under consideration a policy with provisions similar to those in the instant case and the Bane case, *supra*. The first installment under the Pritchett policy was due Jan. 1, 1903. The policy was dated Nov. 7. Pritchett quit the service of his employer Dec. 18, and drew his wages, excepting the sum of $10.30, which he left in the hands of the paymaster of the railroad company for the insurer, pursuant to the order he had given, but did not notify the appellee, in writing, or remit to it the first installment of his premium. He entered the service of another railroad company, and on Jan. 29 had his foot cut off in an accident. Jan. 31 his former employer paid the appellant company $19.39, which it had retained out of Pritchett's December wages. The court reversed a judgment of the lower court in favor of the company on the ground that insured was not in default in the payment of any of the premiums. We quote from the opinion as follows: ''The second installment was not due until February 1st. He had done all he was required to do as to the first installment, if he had remained in the service of the Norfolk & Western Railway Company. But he had not remained in the service of that company, and the question to be determined is what effect shall be given to the clause of the

contract providing that, if he left the service of the railroad company before the first installment became due, then all rights under the policy should cease, unless he notified appellee in writing within three days after leaving the service, and remitted that installment with the notice. It will be observed that this clause only refers to his leaving the service of the railway company before the first installment became due. If he left the service of the company after the first installment became due, it has no application. In that event he was required to give no notice of his leaving the service of the railroad company in order to preserve his rights. It was certainly not contemplated by the contract that when the railroad company retained in its hands the first installment, the insured was also to remit the amount to appellee, with a notice stating that he had left the service of the railroad company. While the proper construction of the contract is a matter of difficulty, taking it as a whole we think it evident that this clause was only inserted as a security for the payment of the first installment.''

We find this very significant statement further on in the opinion: ''If he had left the service of the railroad company before the month of December, appellee would have had no security for the payment of its money, and yet would have been compelled to carry the risk until default was made in the payment of the first installment, *but for this clause of the contract.*''

Thus the court held that the clause referred to in the preceding quotation was binding, and but for said clause the company could have been compelled to pay under the policy, even though he left the service of the company.

We are mindful of the general rule, in construing contracts of insurance, that the presumptions favor the insured because the company makes the contract, and in cases of doubtful provisions or phrases doubts should be resolved in favor of the insured.

The purpose of an insured in taking a policy of insurance is to secure indemnity, and this should not be defeated if a fair or liberal construction will permit a recovery. When the provisions of a policy are susceptible of two interpretations, that which will sustain will be adopted in preference to one that will defeat recovery.

Applying that rule of construction to this case we think the language used is so plain that a construction thereof could not be had to justify a recovery on the part of the appellee under the facts disclosed by the record. The order of assignment bears the signature of the insured; he agreed to the terms as therein stated and the company had a right to rely upon this agreement. The assignment was taken, as suggested in the Bane case, *supra*, to secure the payment of the premium. Many railroad employes are nomadic in nature and except for the security the companies have under these orders of assignment they could ill afford to issue policies providing for the payment of premiums in easy or periodical gales or installments. This character of insurance has been adopted especially to meet the needs and suit the convenience of railroad employes, and under provisions such as we find in the policy in question, it is possible for the employe to carry accident insurance, and but for such plan of payment, many employes would be unable to thus protect themselves and their families.

Giving to the contract in question a fair, reasonable and liberal construction we are of the opinion that when the insured quit the services of the L. & N. R. R. Co., before he had earned as much as $5.00 and withdrew, through another assignment, the amount he had earned, he violated the provisions of said policy in each of the particulars herein above referred to, and this being true this voided the policy and the beneficiary was not entitled to any recovery thereunder.

Wherefore the judgment of the lower court is reversed for further proceedings consistent with this opinion.