### REED *v.* TRAVELERS INSURANCE COMPANY.

1. Where an accident insurance company issues a policy for separate periods of two, two, three, and five months, to a railroad employee who agrees to pay premiums every month for four months, one for each of the insurance periods, and who gives an order on the paymaster of the railroad company to pay the premiums out of his wages monthly for four consecutive months, and the first premium is paid under this order; and where the employee does not earn any wages for the second month specified, to be applied to the payment of the premium for the second period, and in consequence thereof the paymaster has no funds with which to pay that premium; and where the policy stipulates that "all claims for injuries received during any period [except the first] for which the respective premium shall not have been actually paid shall be forfeited to the company," and where the employee is killed by an accident on the railroad during the second period, and no premium for that period has ever been paid, the beneficiary can not recover on the policy.
2. Where exception is taken to the grant of a nonsuit, the admission of evidence over the objection of the plaintiff will not work a reversal, when it appears that the nonsuit should have been granted whether such evidence was admitted or excluded.

Argued January 14, — Decided February 9, 1903.

Action on insurance policy.    Before Judge Reid.    City court
of Atlanta.    December 12, 1901.

*Burton Smith* and *Felder & Rountree*, for plaintiffs.
*James H. Gilbert* and *E. L. Meyer*, for defendant.

SIMMONS, C. J.    A policy of accident insurance was taken out
by Stephen Reed (a fireman on a locomotive engine) with the
Travelers Insurance Company.    On November 20, 1899, the pol-
icy was issued in accordance with his application and with the
terms of an order for money, given by him on the paymaster of the
railroad company by which he was employed.    The policy con-
tained the following clauses:    " The payments directed in the order
or assignment are premiums for separate and consecutive periods
of two, two, three, and five months, and each is to apply only to
its corresponding insurance period.    All claims for injuries re-
ceived during any period [except the first] for which the respect-
ive premium shall not have been actually paid shall be forfeited to
the company."    "In case the insured shall fail to leave in the hands
of the paymaster any premium as it shall fall due, as directed in
said order, this policy shall be void."    Reed was killed in a rail-
road accident on February 16, 1900.    Notice of his death was
given the company, and payment demanded.    The company re-
plied that the policy was not in force at the time of his death, as
the second premium had not been paid.    Thereupon the benefi-
ciary in the policy brought suit against the company to recover the
amount of the policy.    In her petition she alleged most of the
facts above stated, and further that the premiums had been paid
and that the policy was of force from its date, up to and including
the period in which Reed was killed.    The company denied this.
At the trial of the case, after the submission of evidence by the
plaintiff, the court granted a nonsuit.    To this ruling the plain-
tiff excepted.

1. The main question in the case is, whether the premium for
the second insurance period mentioned in the policy had been paid.
It was contended by the plaintiff in error that the evidence showed
that this premium had been paid, and that it was, therefore, error to
grant a nonsuit.    It will be observed, upon reading the applica-
tion and policy, that there were four periods mentioned therein,
each of which was to embrace an insurance contract separate and

distinct from the others, and that the policy was to be ineffective unless the premium had been actually paid for the period in which the accident occurred or injury was sustained. Reed gave an order on the paymaster of the railroad company to pay, out of his wages for the months of December, 1899, and January, February, and March, 1900, five dollars each month to the insurance company, to be applied to the payment of the premiums for the four insurance periods respectively. The first payment was made, and covered the period from November 20, 1899, to January 20, 1900. The second period was to embrace the time between January 20, and March 20, 1900. It is clear, from the evidence, that Reed did not place funds in the hands of the paymaster to cover the payment which was to be made out of his January wages, and that the defendant company did not receive the premium for the second period. Under the terms of the policy, it was incumbent on Reed to pay the premium for the second period at about the first of this period, that is to say, out of his January wages. If he did not do so, then his policy ceased and was not binding upon the company for that period. This brings us, therefore, to the question whether the paymaster had money in his hands with which to pay the premium for the second period. It was insisted here that he had the money, because Reed, the insured, had worked for the railroad company in the month of January, and the order or assignment covered his wages for that month. Having alleged the due payment of the premiums in her petition, it was incumbent on the plaintiff to sustain the allegation by showing, the payment of this premium for the period in which the killing occurred. The only evidence introduced by the plaintiff for the purpose of showing that Reed worked for the railroad company in January was the testimony of one Glover. We have carefully read his testimony, and find it vague, uncertain, and insufficient to show what he was introduced to establish. He testified that, during the months of January and February, he had on several occasions seen Reed, dressed in overalls, standing in the car-shed near an engine, or on the road just outside of the car-shed, standing or sitting upon an engine. This evidence embraced both the months of January and February. The witness testified that some of these occasions were in January, but that he did not know whether Reed was working or not. It did not appear in any way, if the plaintiff worked at all in January, how much he worked,

or what his labor was worth.    This, in our opinion, was not suffi-
cient to authorize the submission to the jury of the question
whether or not Reed earned wages in January which should have
been applied to the payment of the premium for the second period.
The policy contained stipulations or agreements that all claims for
injuries received during any period for which the premium had not
been actually paid should be forfeited to the company; and that if
the insured should fail to leave in the hands of the paymaster the
money to cover any premium as it fell due, the policy should be
void.    The plaintiff failed utterly to show that the premium for
the second period, during which the accident to the insured oc-
curred, had been paid, or that funds for that purpose had been left
in the hands of the paymaster.    It was, therefore, not error to grant
a nonsuit.

It was also contended by counsel for the plaintiff in error that the
books of the railroad company showed that, at the time of Reed's
death, he had due him from that company an amount sufficient to
pay all the premiums due on the policy.    This does not in any way
help the plaintiff.    We have shown that, under the policy, the
insured must have paid the premium before the accident occurred,
or have left in the hands of the paymaster enough of his January
wages to pay that premium.    The money earned in February could
not have been applied by the paymaster to the payment of the
premium for the second period.    The order or special assignment
authorized the paymaster to so apply a portion of Reed's wages for
January, but contained no authority for such an application of his
February wages.    The order authorized the application of part of
the February wages to the payment of the premium for the third
period only.    Upon this last question and the one previously dis-
cussed, see Bane *v.* Travelers Ins. Co., 85 Ky. 677, in which the
facts were exactly similar to the facts of the present case.    See also
McMahon *v.* Ins. Co., 77 Ia. 229, and Landis *v.* Ins. Co., 6 Ind.
App. 502.

2. Exception was taken to the ruling of the court below in ad-
mitting certain evidence of the paymaster of the railroad company,
tending to show that the books of the company did not show that
Reed worked for the company during the month of January.    The
plaintiff put in a part of the interrogatories of the paymaster as her
evidence, and contended that if the defendant wished to introduce

the remainder of the interrogatories, it should put them in as part of its own evidence. The judge ruled that the defendant could read the remainder of the interrogatories in evidence, and that such interrogatories should be considered as evidence of the plaintiff. In the case of *McArdle* v. *Bullock*, 45 *Ga.* 89, it was held that the answers to the direct and cross questions in interrogatories are the evidence of the party who offers to the jury the return of the commissioners. It would seem, from the reasoning of McCay, J., that all of the interrogatories should in the present case be considered the evidence of the plaintiff. However, it will be seen from what has been said above that we do not base our decision of the case upon what appeared in the interrogatories objected to, but upon the failure of the plaintiff to sustain the case made by her petition. The nonsuit was, therefore, right without regard to the question as to the admission of the interrogatories, or as to whether they should be considered as the evidence of the plaintiff.

*Judgment affirmed. By five Justices.*