## 5264. ROYAL BENEFIT SOCIETY *v.* NAYLOR.

The benefit certificate having lapsed because of failure to make monthly payments when due, and its reinstatement being, by its terms, conditioned on good health of the insured at the expiration of fifteen days from the time of the payment required for reinstatement, as well as at the time of receiving the payment at the home office of the benefit society, and it appearing that the insured was not in good health when the overdue payments were made, and died in less than fifteen days thereafter, a recovery of the death benefit was not authorized, though the agent receiving the overdue payments was informed, at the time of receiving them, as to the illness of the insured.

DECIDED JANUARY 20, 1914.

Certiorari; from Chatham superior court—Judge Charlton. August 9, 1913.

*Oliver & Oliver, W. S. Connerat,* for plaintiff in error.

*Twiggs & Gazan,* contra.

ROAN, J. The Royal Benefit Society, a fraternal benefit association having its home office in Washington, D. C., on May 25, 1912, issued a policy on the life of Mrs. F. A. Naylor, of Savannah, Georgia, through one of its agents located in Savannah, the beneficiary under the policy being Andrew Naylor, her husband: As part of the contract of insurance the following stipulations, in substance, appear: A payment is due on this certificate for each month, payable on or before the last day of the month. If the payments shall not have been made within the stipulated time as provided, this certificate shall thereupon become lapsed and forfeited. When lapsed this certificate can be reinstated with the consent of the society, and provided that at the time such payments are received at the home office of the society, and at the expiration of fifteen days thereafter, the member is in good health and free from disease or disability. If at the expiration of fifteen days after the receipt of said payments at the home office, the member should not be in good health and free from disease or disability, or should the member's physical condition have become impaired

in any way since this certificate became void or lapsed, then only the arrearages or overdue payments and all subsequent payments shall upon demand be returned to the assured. Overdue payments made to an agent or collector shall not be considered as having been received at the home office until the remittance for said overdue payments has actually been received at the home office from said agent or collector; and the society is not to be held liable for any delay in its transmission. The contract contains the further stipulation and agreement that agents of the company "are not authorized to make or modify this or any other contract in behalf of the society, and can not extend the time of any payments, nor give credits, nor waive forfeiture, nor bind this society in any way beyond its statements herein." "Receipts for payments on this certificate will not be valid except upon regular printed forms issued by the society for the purpose." It was testified that the payments due for the months of June and July, 1912, were not made until August 6, 1912, when the husband of the assured went to the benefit society's agent in Savannah, and informed the agent that his wife was ill, but was daily improving, and paid the agent $2.70, the total amount then overdue; and on August 8, 1912, he paid the agent $1.35, the amount due for that month. The assured died on August 10, 1912. As to these facts there was no dispute in the argument. A suit for the amount of the policy was brought against the benefit society by the husband, in a justice's court. The jury in that court rendered a verdict for the plaintiff. Certiorari was sued out by the defendant, the judge of the superior court overruled the certiorari, and the defendant excepted.

There was no evidence that the amount of the arrearages or overdue payments had reached the home office of the defendant before the death of the assured; and as the contract provided that no agent had a right to waive any part of the contract, and as no payment, evidenced by a receipt on one of the society's regular printed forms, as provided for, was made on the part of the assured until August 6, 1912, at which time the policy had lapsed, and as the payment then made could in no event, under the contract, restore life to the policy sooner than fifteen days after payment was made, and as the assured died before the expiration of the fifteen days, it follows that when she died she had no insurance in the society, and the husband had no legal claim for

such. The verdict against the defendant was therefore contrary to law and evidence, and the judge of the superior court committed error in not sustaining the certiorari and ordering a new trial. The general rule that acceptance of an overdue premium amounts to a waiver of a forfeiture has no application in the present case. Even if knowledge of the agent that the insured was ill at the time the overdue premium was paid is imputable to the insurer, by express terms of the contract acceptance of the premium would not have the effect of reinstating the certificate unless fifteen days had elapsed after the premium was thus accepted. This being true, the certificate, by the express terms of the contract, was never reinstated, and was lapsed at the time of the death of the insured. For these reasons the decisions relied upon by the defendant in error on the subject of waiver are not applicable. See the following authorities: *Lippman* v. *Ætna Ins. Co.,* 108 *Ga.* 391 (33 S. E. 897, 75 Am. St. R. 62) ; *Mutual Life Ins. Co. of Ky.* v. *Clancy,* 111 *Ga.* 865 (36 S. E. 944) ; *Reese* v. *Fidelity Mutual Life Asso.,* 111 *Ga.* 482 (36 S. E. 637) ; *Mutual Reserve Fund Life Asso.* v. *Stephens,* 115 *Ga.* 192 (41 S. E. 679) ; *Reed* v. *Travelers Ins. Co.,* 117 *Ga.* 116 (43 S. E. 433) ; *Hutson* v. *Prudential Ins. Co.,* 122 *Ga.* 847 (50 S. E. 1000) ; *Clark* v. *Mutual Life Ins. Co.,* 129 *Ga.* 571 (59 S. E. 283) ; *Brown* v. *Mutual Benefit Life Ins. Co.,* 131 *Ga.* 38 (61 S. E. 1123) ; *Few* v. *Supreme Lodge Knights of Pythias,* 136 *Ga.* 181 (71 S. E. 130) ; *Stephenson* v. *Empire Life Ins. Co.,* 139 *Ga.* 82 (76 S. E. 592). *Judgment reversed.*

RUSSELL, C. J., dissenting. I think that the learned trial judge correctly overruled the certiorari. There are two principles that should not be lost sight of in determining whether the judgment should be affirmed or reversed. In the first place, the verdict, which is supported by some evidence, has the approval of the trial judge; and the evidence should be viewed most favorably to the prevailing party. In the next place, as remarked by Justice Bradley in Insurance Company v. Norton, 96 U. S. 242 (24 L. ed. 689), and again in Insurance Company v. Eggleston, 96 U. S. 577 (24 L. ed. 841), "Forfeitures are not favored in the law;" and "courts are always prompt to seize hold of any circumstances that indicate an election to waive a forfeiture, or an agreement to do so on which the party has relied and acted. Any agreement, declaration, or course of action, on the part of an insurance company, which

leads a party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract. The company is thereby estopped from enforcing the forfeiture." Under the evidence for the plaintiff (which the jury believed and which they were authorized to believe) there was sufficient testimony, in my judgment, to warrant the conclusion on the part of the jury that the policy was not in fact forfeited at the time of the last payment, on August 8. The plaintiff testified that he made the payments for June and July. It is true he was unable to remember the exact amount he paid, and stated that he had lost his receipt; but he testified that he paid the agent of the benefit society, both in June and July, and that he was given a receipt. The jury were authorized reasonably to infer that the agent, in ordinary fidelity to his principal, would not have accepted a less amount than the sum of $1.35, which was the monthly payment, for each of these months. If this is true, then the payments made in August were merely pro gratia, not being required under the terms of the contract until the last day of August, at which time the insured was already dead. The stipulation of the contract which provides that no receipts will be recognized as valid unless they appear on the written forms of the society can not affect this testimony. In the first place, the receipts lost by the plaintiff may have been taken upon such printed forms; and furthermore, a receipt is prima facie evidence of payment (Civil Code, § 5795), and, in my opinion, no contract could be made which would abrogate this section of the code and set aside the laws of this State upon the subject. The various stipulations of the contract pertinent to the issues involved are correctly quoted in the opinion filed by the majority of the court, and it is plain that the agent had no right to waive any of the conditions of the contract, and that a person would not be reinstated except at the option of the benefit society, and then only after fifteen days had elapsed from the time the society actually received the payment tendered; but in my view these stipulations do not affect the present case. The contract itself shows without equivocation that the business of the society was to pay sick and funeral benefits, in case of sickness or death, to persons who at the time the insurance was taken were in good health. Provision is made in it for voiding the policy

in case the applicant is not in good health at the time the contract is made; and the provisions in regard to reinstatement can not be extended beyond the case of persons in good health. In the evidence it is undisputed that even if the payment was made after the policy was forfeited, as contended, instead of at the time testified by the plaintiff, and before there could have been a forfeiture, the plaintiff informed the duly authorized agent of the society that his wife was sick. Upon this statement it was the duty of the agent to decline to accept any payment. Under the contract he was expressly precluded from making any waiver or alteration of the contract. But his knowledge of the sickness of the plaintiff's wife became the knowledge of the society instantly, and was imputed to it. See *Johnson* v. *Ætna Insurance Company*, 123 *Ga.* 404 (51 S. E. 339, 107 Am. St. R. 92). The same principle is reasserted in *Supreme Lodge K. of P.* v. *Few*, 138 *Ga.* 784 (76 S. E. 91), and is supported by a long list of citations; also in *Fair* v. *Metropolitan Life Insurance Co.*, 5 *Ga. App.* 708 (63 S. E. 812). These numerous rulings are followed in every decision of this court where the point is involved. Instead of declining the payment, he took plaintiff's money. If there is one principle well settled in insurance law, it is that the insurer can not accept and keep a premium and decline to comply with the insurance contract in case of the death or sickness or other loss of the insured. The evidence authorized the jury to find that the benefit society never returned this money until after the death of the insured. It authorized the inference that the society was playing chances.

It is insisted that there is no evidence that the benefit society received the money. The fact that the society itself, and not the agent, after the death of the insured, tendered repayment of this money, certainly, in my judgment, was a sufficient circumstance to authorize the conclusion that the money was forwarded to the society by the agent, and that the society received it. The agent had no right to waive anything, but, under the authorities cited above, the society knew that the plaintiff's wife was sick; and with this knowledge it accepted the money, and kept the money until after it was informed of the death of the insured. There was ample time after the payment of the $2.70 on August 6 for the company to have returned the money before the death of the insured. The payment of the $1.35 on August 8 is of no consequence, because, as already stated, it was not due until the last day of August. If,

as held by the Supreme Court of the United States, and heretofore by this court, courts should be prompt to seize upon any excuse to prevent the forfeiture of contracts of insurance, certainly in a case which to my mind is as plain as this I may be justified in dissenting (with all becoming modesty) from the judgment of the majority of the court.