## Stewart v. Continental Casualty Company.

(Decided May 24, 1929.)

ALLAN D. COLE and J. D. ATKINSON for appellant.

THOMAS E. NICKEL for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE Mc-CANDLESS.—Affirming.

On November 21, 1917, the Continental Casualty Company issued an insurance policy of $1,000 on the life of Bastin Stewart payable to Elizabeth Stewart as beneficiary. Stewart was an employee of the Chesapeake & Ohio Railway Company, and in the aplication the following stipulation appears: "I agree to pay for my said policy an annual premium of $44.00 in five installments of $8.80 each. If paymaster's order is given to provide for the payment of these installments I agree to pay them as therein provided and do hereby make such order a part of my contract with the company. . . . The amount of my said premium is $44.00 and I have agreed to pay in five installments as follows; $8.80 from my wages for the month of December 1917; $8.80 from my wages for the month of January 1918; $8.80 from my wages for the month of February 1918; $8.80 from my wages for the month of March 1918; $8.80 from my wages for the month of April 1918."

Simultaneously with the application insured executed a paymaster's order to his employer which provided, inter alia: "This order is given to provide for the premium thereon which you are authorized and requested to take from my wages in installments as hereinafter designated, pay to the company for me and charge against my pay account for services rendered or to be rendered to my employer on whom this order is drawn. If for any reason whatever you fail to make deduction of any installment from the wages of the period hereinafter designated for that purpose, you are further authorized and requested at the option of the company to deduct and pay the defaulted installment from any of my subsequent wages. I understand and agree as to the duration of my said insurance: (1) That my said policy after taking effect so continues until the expiration of the period hereinafter designated for the deduction of the last installment of premium unless I sooner cease to be in the service of my present employer, *or unless default be made in the payment of any prior installment, in either of which events my insurance shall at once terminate without notice except as it may be continued in force by reason of premium previously paid;* (2) . . . That premium if payable in five installments the payment of the first, second, third, fourth and fifth installments shall continue my policy in force for respective periods of two, two, two, three and three months, all such periods to be computed successively from the date of the policy; (3) *That the action of the paymaster in deducting these installments from my wages is entirely at my risk;* (4) *That should my policy lapse at any time by reason of nonpayment of any installment and premium afterwards be paid then such payment shall reinstate my policy only as provided therein.*" (Our italics.)

The policy contains the following provision: "3. If default be made in the payment of the agreed premium for this policy, the subsequent acceptance of a premium by the company, or by any of its duly authorized agents shall reinstate the policy, but only to cover loss resulting from accidental injury thereafter sustained."

Stewart remained in the employ of the Chesapeake & Ohio Railway Company until the 16th day of February, 1918, when he was killed in the line of his duty. Proofs of death were duly made out and presented and demand

made for payment of the policy, which was refused, and in proper time this suit was filed to recover thereon. The defense is that the policy lapsed for nonpayment of premium; it being admitted that no payments were made of any installment premiums to the company by the paymaster; it being further admitted that Stewart collected all that was due him on each monthly wage without any deductions being made for the payment of the installment premium by the paymaster. Except it does appear a controversy existed at the time between the Director General in charge of railways and the employees as to the wage schedule, and that this was adjusted later and $45 additional placed to the credit of Bastin Stewart several months after his death.

The jury returned a directed verdict for the defendant, and plaintiff appeals. The parties to be referred to hereafter as appellant and appellee.

Appellant calls attention to the following stipulation in the paymaster's order: "The action of the paymaster in deducting the installment from my wages is entirely at my risk," and also to the wording of that stipulation as it appeared in the paymaster's order attached to the policy of the same company in Pritchett v. Continental Casualty Co., 117 Ky. 923, 80 S. W. 181, 25 Ky. Law Rep. 2064: "I agree that failure to deduct any of the above installments by said paymaster, for any cause, is at my risk," and argues that as originally written the stipulation was intended to cover negligence upon the part of the paymaster in failing to act, and that as now written it means the insured assumes the risk of all affirmative action upon the part of the paymaster, such as loss or embezzlement of the funds actually deducted by him, but not of failure to make such deductions; the conclusion being that, as Stewart's wages were in the hands of the railway company and were subject to the control of the paymaster, the failure of the latter to deduct the premium installments as they matured could not be relied upon by the insurer as a defense unless it gave reasonable notice to the insured of its failure to collect same. In considering this argument we must remember that the policy is to be construed as a whole and that the first stipulation in the paymaster's order, quoted supra, explicitly provides for a termination of the policy without notice in case of default in the payment of a prior installment.

Also in construing such policies most strongly against the insurer, when it appears that the insured has left with the paymaster a sufficient sum for the payment of the installments he is authorized to rely on that official making the proper deductions and remittance, and we so held in the Pritchett case, supra. To the same effect, see Fidelity & Casualty Co. v. Johnson, 72 Miss. 333, 17 So. 2, 30 L. R. A. 206; National Benefit Ass'n v. Jackson, 114 Ill. 533, 2 N. E. 414; Johnson v. Standard Life, etc., Co., (Tex. Civ. App.) 97 S. W. 831; Pacific Mutual Life Ins. Co. v. Walker, 67 Ark. 147, 53 S. W. 675. In the leading case of Lyon v. Travelers' Ins. Co., 55 Mich. 141, 20 N. W. 829, 54 Am. Rep. 354, the rule is thus stated: "But the insured, in a case like this, when he has provided for the payment when due, and the premium made is in the possession of the defendant or under its control, payment will be deemed to have been made until the insured is notified by the defendant to the contrary." Certainly notice would be necessary to negative the presumption of payment in such a case, if indeed the presumption is not conclusive.

However, the above ruling applies only to cases in which the insured *has left* a sufficient amount of his wages with the paymaster for the payment of the premium, and can have no application to the case at bar. Here the insured was issued a policy which was carried in force from November 21, 1917, to January 1, 1918, on his agreement for the first installment of the premium to be deducted from his December, 1917, wages, but on which he did not pay one cent. Nothing was deducted therefor from his December or any subsequent wages, and nothing was left with the paymaster for that purpose. True the railway company at some time during those months owed him something for labor. Also it is true that the paymaster's order was retained by it. But that order was not formally accepted, and unless and until the premium was deducted the insured could legally assign all his wages to a third party or collect them himself, and in fact did so do, leaving nothing in the hands of the paymaster for the payment of the premium. Under such circumstances, no liability was incurred by either the railway company or the paymaster. Inter-Ocean Casualty Co. v. Dunn, 219 Ky. 103, 292 S. W. 742; Henry Clay Fire Ins. Co. v. Denker's Ex'x, 218 Ky. 68, 290 S. W. 1047; Wallins Creek Collieries Co. v. Saylor, 214 Ky.

206, 282 S. W. 1095. And under the express terms of the stipulation above quoted the policy terminated on the 1st of January, 1918, without notice.

We have held that in cases of this character "the paymaster is agent for both parties; the agent of the insured to pay over the agreed amount from his wages as it becomes due and the agent of the insurer in remitting the payment to the home office." Continental Casualty Co. v. Jasper, 121 Ky. 77, 88 S. W. 1078, 28 Ky. Law Rep. 53. In that case recovery was denied because no installment was deducted or remitted. True it appears that notice of the default was there given, but no stress was laid on that fact.

The exact question was raised under somewhat similar circumstances in Bane v. Travelers' Ins. Co., 85 Ky. 677, 4 S. W. 787. In the record of that case it does not appear that the policy contained a provision for the policy to terminate without notice upon default in the payment of an installment premium, a policy much more favorable to the insured than the one we have under consideration. In that case the January and February installments were deducted and paid, carrying the policy to the 10th of May. Insured did not work during March and April and no installments were paid during that period. He began to work again on the 1st of May and on the 10th of May the company owed him over $10. He continued to work until May 28th, when he was killed. At that time the company owed him $47. The company had not given him any notice of default in payment of the March and April premiums, and it was argued that the third installment which was due March 10th should have been paid out of his May wages, $10 of which was due on May 10th, the date to which the February payment had carried the policy in force, or at any rate that the paymaster's order was binding on the drawer as a common-law order, as it imported an indebtedness by him to the insurance company, and as the company neither returned the order to him nor notified him of its nonpayment it had waived the right of forfeiture of the policy. The court considered the question very carefully and reached the conclusion that the paymaster was not authorized to deduct the third installment of the premium from the insured's May wages and turned the case on whether insured was entitled to notice of default in the payment of the March and April installments. And also reached the

conclusion that he was not entitled to such notice, and continued: "It was his duty, if he desired to continue the policy, to have paid the installments, and his failure to do so terminated the liability of the company. It is really a misnomer to say that the policy in this instance was forfeited by the nonpayment of the premium. The insurance, by the express terms of the policy, ceased because of such nonpayment. The payment of the premium was a condition precedent to the continuation of the risk, and even a court of equity will not interfere to release one from the consequences of such a failure. The order in this case, in view of the circumstances, did not bind the drawer personally, and with a cessation of the policy the entire contract was at an end."

As suggested supra, the provisions of the policy under consideration are less favorable to the insured than was the one in the Bane case, and construing all of its provisions together, it is clear that this policy terminated on the 1st of January, 1918, and was not in effect at the time of the injury. See, also, Standard Accident Ins. Co. v. Smith, 184 Ky. 155, 209 S. W. 848; Geddes v. Ann Arbor Railroad Employees' Relief Ass'n, 178 Mich. 486, 144 N. W. 828; Employers' Liability Assur. Corp. v. Rochelle, 13 Tex. Civ. App. 232, 35 S. W. 870.

It is finally argued that, in view of the rate board's decision upon the wage dispute rendered several months after the insured's death, he was awarded $45 additional wages, and that this sum was in the paymaster's hands and should have been utilized in the payment of premiums. These wages were not in the hands of the paymaster during insured's lifetime and were not subject to deductions.

Wherefore the judgment is affirmed.