# Benefit Association of Railway Employees v. Hancock.

(Decided March 21, 1933.)

H. H. DENTON, PAUL E. KELLER and J. S. COOPER for appellant.

B. J. BETHURUM and VIRGIL P. SMITH for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

George Dewey Brassfield resided at Somerset, Pulaski county, Ky., and was a section foreman in the

employment of the Cincinnati, New Orleans & Texas Pacific Railway Company. The Benefit Association of Railway Employees, prior to the 1st day of October, 1929, issued and delivered to him a policy insuring his life. On the 1st day of October, 1929, there was due the company on an old policy $1.10, the balance of a premium. It took up this policy and issued to him another, for the agreed premium of $3.65, payable monthly, insuring him in the sum of $2,000 against accidental death. His wife, Ella Brassfield, was the designated beneficiary in the latter policy. On the 10th day of April, 1931, through accidental, external, and violent means, he was killed while in the line of duty as an employee of the railway company. Notice of his death was furnished to the insurance company, and it promptly denied its liability. He procured the policy on a written application. His signature to the application was "Dewey Brassfield," but it was given in the policy, as George Dewey Brassfield, Elihu, Ky. Simultaneously with his signing of the application, he executed and delivered to the company an instrument commonly known as a "pay order," in this language:

"Dewey Brassfield    No. 629512

"For value received, I hereby authorize my employer, C. N. O. & T. P. Ry. to deduct from my wages and pay to Benefit Association of Railway Employees the following sums: First deduction to be made from October 1929 earnings.

| | | |
|---|---|---|
| Membership Fee Bal. Oct. Per Capita Tax | $2.55 | Regular monthly deduction to be made from |
| Premium No. Nov. | $3.65 | each months earnings— to be made during my |
| Total First Deduction | $6.20 | employment by said employer; |

| | |
|---|---|
| Beginning Nov. 1929 Earning | |
| One months premium | $3.55 |
| One month's per capita Tax | .10 |
| Total Regular monthly deduction | $3.65" |

Neither the $1.10 which was the balance of the premium due and unpaid at the time the policy was issued, nor the first premium on the present policy, was paid upon the delivery of the policy. Both were taken care of by the pay order retained by it. It was the custom of the employees, the railway company, and the Benefit

318

Association of Railway Employees, for the railway company to retain the possession of the pay order, deduct from the wages of the employee the premuim, and remit it to the insurer. Section G of the policy and the pay order embraced the agreement between the insured employee and the Benefit Association of Railway Employees for the payment of the monthly premium by the employee of the railway company. Section G of the policy is in this language:

"Sec. G. Premiums on this policy may be paid either in cash or through paymaster's orders when authorized by the Insured. The payments specified in the order for the payment of moneys on this policy are premiums for consecutive months and each shall apply only to its corresponding insurance period. No claim during any period for which its respective premium has not been actually paid in full shall be valid under this policy except such claims as may arise during the period of grace and except in case of a just claim originating before the end of the month from the wages of which the first premium is to be dedicated, as provided in the order; but no claim shall be valid in any such case if the insured shall have left the employment of the employer named in the order without having earned in the month designated therein wages to pay said first premium nor if the Insured shall have collected or disposed of the wages earned in said month, so that there shall not remain sufficient wages for the payment of said premium, unless the payment then due shall have been otherwise paid in cash.

"The insured may terminate this policy contract and revoke his pay order at the expiration of thirty (30) days from 12 o'clock noon of the date of written notice delivered at or mailed to the Home Office of the Association, and the Association may terminate this policy contract at the expiration of thirty days (30) from 12 o'clock noon of the date of written notice delivered to the Insured or mailed to his last known address, but such termination by the Association shall be without prejudice to any claim accrued or existing at date of termination. In the event this policy contract is terminated by either party hereto, the Associa-

tion shall pay the insured by cash or check the pro-rata unearned portion if any, on the date of termination, of the premiums actually paid by the Insured.''

In accordance with an existing custom, the Benefit Association of Railway Employees monthly furnished the railway company a list of its employees who had signed and delivered to it pay orders, giving their names, occupations, locations, and order numbers, from whose wages the railroad company would deduct the monthly premiums due the insurer, charge them to the employees, and remit same to the Benefit Association of Railway Employees, Chicago, Ill. It delivered to the railway company a deduction list for the month of September, 1929, containing the names of twenty-four employees, giving their occupations, location, and order numbers, which included ''4 Brassfield D 163, Occupation Sec. Foreman, Location, Cedar Grove, Order No. 308,184, amount $1.10.'' The October list contained the names of twenty-three employees, including ''4 G. E. Brassfield 163, Occupation, Sec. Foreman, Location, Cedar Grove, Order No. 629,512, amount due $6.20.'' This list was marked, as to Brassfield, ''No time,'' and returned by the railway company to the Benefit Association of Railway Employees. The November list contained the names of twenty-two employees, including ''3 G. D. Brassfield 163,'' with his occupation, location, and order number, identical with those of the list submitted for the month of October, excepting his name thereon was G. D. Brassfield, the amount to be deducted was $7.30, which was returned to the Benefit Association of Railway Employees with the remark, ''No time.'' From the date of the issuance of the last policy, Brassfield continued in the employment of the railroad company as a section foreman, with the location designated ''Cedar Grove'' and ''Order No. 629,512.''

The deduction list for September, 1929, was for $1.10, being the balance due under the old policy. The deduction list for October was for $6.20, which is made up of a balance for October, $2.55, premium November, $3.65. The deduction list for November was for $7.30. No deduction for either of these amounts was made by the railway company from Brassfield's wages and remitted to the Benefit Association of Railway Employees. Brassfield's wages were $127.50 per month.

He drew his wages on the 30th day of each month, leaving always one-half of one month's wages with the railroad company, amounting to $55 or $65 per month. Continuously from the date of the policy to the date of his death there was in the control of the railway company one-half of one month's salary due him. The railway company carried Brassfield's name on its records as "D. Brassfield." Each of the deduction lists transmitted by the insurance company to the railway company carried his employment number, occupation, location, and order number, as well as the amount of the premium to be deducted from his wages by the railway company. The railway company failed to observe the occupation, location, and order number of Brassfield as they appeared on the deduction lists, which were adequate to identify him, notwithstanding the error in his initials, and deduct the premiums and remit same to the insurance company. On account of this failure of the railway company, the benefit association ceased to include his name in its deduction lists. It is claimed by the insurance company that on November 8, 1929, it mailed a postal card addressed to D. Brassfield, Box 52, Elihu, Ky., notifying him in this language:

"Form 42.

"Dear Member: Your premium for the month of ———— was not collected by your paymaster. If you are back in service or go back please notify us at once. If you have changed your occupation, we will, without cost to you, change your policy to conform with your present duties. If you have a claim pending you may request deduction of the amount of your dues when submitting claim proof. Asking you to remit your dues direct to the national office, Chicago, Illinois, so that your certificate may remain in force, we remain.

"Fraternally yours,

"Benefit Association of
Railway Employees,
Chicago, Ill.

"P. O. Box 790."

Mary Alson, chief clerk of delinquent accounts of the Benefit Association of Railway Employees, claims that she prepared, addressed, properly stamped, and mailed the post card by depositing it in the United

States Postoffice. Ella Brassfield Hancock, the beneficiary of the policy, claims that she received from the date of the policy until the death of George D. Brassfield all mail addressed to him, "Box 52, Elihu, Ky.," and that no such post card ever arrived by mail addressed to George D. Brassfield.

The testimony of Mary Alson showing the mailing of the post card, and that of the widow of Brassfield showing that she always received all mail addressed to Brassfield and that no such post card ever arrived by mail, determines a vital issue in the case. There is a presumption arising from the testimony of Mary Alson that the post card was received by the addressee as soon as it was transmitted to him by the usual course of mail. Such presumption was rebutted by evidence that it was not in fact received, or not received in the ordinary course of mails. Notwithstanding the criticism of the testimony of the widow of Brassfield, on the ground it was elicited by leading questions, it was sufficient to overcome the presumption that it was received by the addressee, Brassfield. It is the rule in such cases that, where there is a denial that a letter or post card was delivered, and the mailing of it is the only evidence of its receipt, the party upon whom the burden is cast of showing it was received is regarded as having failed to establish a delivery. Home Insurance Company of New York v. Roll, 187 Ky. 31, 218 S. W. 471.

Accepting this rule, this case must be considered and determined on the hypothesis that no notice was given to Brassfield of the nonpayment of either the September, October, or November premium upon which the Benefit Association of Railway Employees relies as a forfeiture.

This case does not fall within the line of cases where the insured draws all of his wages as it becomes due (Stewart v. Continental Casualty Co., 229 Ky. 634, 17 S. W. (2d) 745, 67 A. L. R. 175), or leaves the services of the employer to whom the pay order is addressed (Standard Accident Ins. Co. v. Smith, 184 Ky. 155, 209 S. W. 848), or where no money is earned during the period from which the premium is to be paid (Reed v. Traveler's Ins. Co., 117 Ga. 116, 43 S. E. 433).

The failure to collect Brassfield's premium was primarily the fault of the Benefit Association of Rail-

way Employees in not remitting to the employer a deduction list showing his correct name, and secondarily the fault of the agents of the employer in not observing notwithstanding the mistake in his initials, his occupation, location, and order number which were on the lists, although his initials thereon were incorrect. It was the duty of the insurer to make demand for the premiums in accordance with its contractual obligation to do so, by remitting to the employer monthly deduction lists showing his correct name, the manner agreed upon for their payment, as well as in accordance with the custom of the insurer and the railway company. The delivery of its deduction list carrying Brassfield's correct name to the employer was its indispensable duty and a condition precedent to its right to claim a forfeiture on the ground of nonpayment of the premiums. The railway company was in possession of a sufficient amount of his wages, and a demand accordingly would have been followed by payment. The effect of the insurer's furnishing such incorrect lists, in so far as Brassfield was concerned, was equivalent to an absolute failure to furnish it and make demand, which when considered in connection with its failure to notify him of the claimed nonpayment of the premiums, is suffiicent to constitute an estoppel to assert its right to rely upon a forfeiture for nonpayment of the premiums. Beets v. Inter Ocean Casualty Co., 159 Tenn. 564, 20 S. W. (2d) 1040; Cotten v. Fidelity & Casualty Co. (C. C.) 41 F. 506; Moore v. Globe Indemnity Co., 36 D. L. R. 489; Wick v. Western Life & Casualty Co., 60 Mont. 553, 199 P. 272. The parties to the insurance contract had the right to agree to waive a cash payment and to provide that the pay order be accepted as a provision for the payment of the premiums. National Benefit Association v. Jackson, 114 Ill. 533, 2 N. E. 414. Where the contract of such insurance provides for, and authorizes, the paymaster to deduct the monthly premiums from the insured's wages, the duty of the insured is usually performed if he leaves a sufficient amount in the hands of the employer to meet the installments as they fall due, and the insured is under no obligation to see that the money reaches the insurer. It devolves upon the insurer to present the order for the payment as the installments fall due, and, in case of nonpayment, to notify the insured of their nonpayment as a prerequisite to its right to insist

on a forfeiture therefor. This established rule when applied to the proven facts deprives the Benefit Association of Railway Employees of its right to rely upon the nonpayment of the premiums as grounds of forfeiture. Pritchett v. Continental Casualty Company, 117 Ky. 923, 80 S. W. 181, 25 Ky. Law Rep. 2064; Leverett v. Continental Casualty Co., 247 Mich. 172, 225 N. W. 515; Cotten v. Fidelity & Casualty Co. (C. C.) 41 F. 506; Pacific Mutual Life Ins. Co. v. Walker, 67 Ark. 147, 53 S. W. 675; Lyon v. Traveler's Ins. Co., 55 Mich 141, 20 N. W. 829, 54 Am. Rep. 354; Fidelity etc., Co. v. Johnson, 72 Miss. 333, 17 So. 2, 30 L. R. A. 206; Johnson v. Fidelity, etc., Co., 184 Mich. 406, 151 N. W. 593, L. R. A. 1916A, 475.

The instructions given to the jury are criticised, but it is our opinion that plaintiff was entitled to a peremptory instruction, and therefore, conceding the instructions given to the jury are susceptible to the objections presented against them, the insurer was not prejudiced by the giving of them.

As to the issue respecting the giving of notice to Brassfield of the nonpayment of premiums, the plaintiff was entitled to a peremptory instruction. See H. C. Whitmer Co. v. McClung, 247 Ky. 625, 57 S. W. (2d) 648, decided February 21, 1933, and cases cited.

Viewing the case in this light, it is easily distinguished from Bane v. Travelers' Ins. Co., 85 Ky. 677, 4 S. W. 787, 9 Ky. Law Rep. 211; Stewart v. Continental Casualty Co., 229 Ky. 634, 17 S. W. (2d) 745, 67 A. L. R. 175; Ohio National Life Ins. Co. v. Cradock, 221 Ky. 821, 299 S. W. 964; Continental Ins. Co. v. Hargrove, 131 Ky. 837, 116 S. W. 256; Home Ins. Co. v. Roll, 187 Ky. 31, 218 S. W. 471; Foutz v. Hacker, 200 Ky. 233, 254 S. W. 744; Continental Casualty Co. v. Jasper, 121 Ky. 77, 88 S. W. 1078, 28 Ky. Law Rep. 53.

It is argued that the questions propounded to Brassfield's widow eliciting from her the testimony showing she received all of the mail of her husband and that in this way she knew he did not receive the post card mailed to him by Mary Alson, were leading, and that therefore her testimony in respect to this topic should be disregarded. Even if the questions be considered leading, they were not such as to bring the answers thereto within the rule forbidding con-

324

sideration of answers to leading questions. Her testimony was competent, though elicted by leading questions, and the admission of it was not error, as the leading questions propounded to her were not so persistently indulged in as to manifest a disregard of law by counsel and abuse of the court's discretion. Blankenship v. Com., 234 Ky. 531, 28 S. W. (2d) 774.

The contract in the present case consists of the policy, the application, and the paymaster's order. The insured fully complied with all its provisions, from the issuance of the policy until his death. The nonpayment of the premiums was no fault of his. He literally complied with all of the requirements of the contract. The insured failed to give him notice of the nonpayment of the premiums, which together with the concurrent negligence of itself and the employer was the proximate cause of their nonpayment. It would be unconscionable, under the proven facts, now to permit the insurer to avail itself of its and the employers derelictions as a ground of forfeiture to defeat the policy.

Perceiving no error prejudicial to the substantial rights of the appellant, the judgment is affirmed.