# MISSOURI STATE LIFE INS. CO. v. COMPTON.

## No. 4465.

Court of Civil Appeals of Texas. Texarkana.

June 20, 1934.

Rehearing Denied June 28, 1934.

Wm. Hodges, of Texarkana, Tex., and Arnold & Arnold, of Texarkana, Ark., for appellant.

Wm. V. Brown, of Texarkana, Tex., for appellee.

SELLERS, Justice.

This suit was brought in the district court of Bowie county against Missouri State Life Insurance Company upon a petition which alleged:

"1. Plaintiff alleges that on or about the 10th day of October, 1927, that the defendant issued and delivered to the Missouri Pacific Railroad Company its Group Policy No. G-2377, wherein and whereby it insured the employees of said Missouri Pacific Railroad Company.

"2. Plaintiff alleges that on the 10th day of October, 1927, he was an employee of the Missouri Pacific Railroad Company and was protected by said Group Policy hereinabove referred to, and that this plaintiff was issued a certificate of insurance No. 3905, by said Missouri State Life Insurance Company under Group Policy No. 2377, issued to said Missouri Pacific Railroad Company, and at the time of the issuance of said policy, or certificate No. 3905, by the defendant to this plaintiff, that plaintiff was an employee of said Missouri Pacific Railroad Company, and that under the terms and provisions of said contract the Missouri Pacific Railroad Company paid a part of the premium on the policy and that the plaintiff paid the other portion thereof out of his wages or earnings, and the same was deducted out of his earnings by the Missouri Pacific Railroad Company as the agent of the said Missouri State Life Insurance Company and transmitted to said Missouri State Life Insurance Company by said Missouri Pacific Railroad Company.

"3. Plaintiff alleges that said certificate or Policy No. 3905 issued by the defendant to this plaintiff, is as follows, to-wit:

"Missouri State Life Insurance Company
"St. Louis, Missouri.
"Group Policy No. G-2377
"Certificate No. 3905.
"This is to certify that under and subject to the terms and conditions of a Group Policy of Insurance, No. G-2377, issued and delivered to the Missouri Pacific Railroad Company (Hereinafter called the Employer) by the Missouri State Life Insurance Company (Hereinafter called the Company) the life of Grover A. Compton is insured for the sum of Two Thousand Dollars, payable to his wife, Dora A. Compton, as beneficiary if death shall occur while an Employee of the Employer during the continuance of the insurance under this certificate. Such payment shall be made in one amount, or, at the election of the Employee, in monthly or weekly installments.

"The beneficiary may be changed by the Employee by notifying the Company through the Employer.

"The insurance provided by the said policy for the Employee shall terminate at the expiration of the period for which premiums are last deducted by the Employer from the pay of the Employee, or remitted by the Employee to the Employer, unless the Employee shall elect to continue the insurance in accordance with the Conversion Privilege given on the second page of this certificate.

"Missouri State Life Insurance Co.
"M. E. Singleton, President.

"Dated. October 10, 1927, and that plaintiff is claiming the benefits under the following provisions of said certificate:

" 'Total and Permanent Disability Benefits

" 'If the employee shall furnish the Company with due proof that before having attained the age of sixty years, he or she has become totally and permanently disabled by bodily injury or disease, and that he or she is then, and will be at all times thereafter, wholly prevented thereby from engaging in any gainful occupation, and that he or she has been so permanently and disabled for a period of six months, the Company will immediately pay to the Employee in full settlement of all obligations hereunder, the amount of insurance in force hereunder on the Employee at the time of the approval by the Company of the proofs aforesaid. This amount will be paid either in one sum or in installments as hereinafter provided.'

"4. Plaintiff further alleges that on or about the 2d day of June, 1931, plaintiff became totally and permanently disabled as the result of diseases and that since said date he has been totally, wholly and permanently disabled from performing any kind and character of labor and earning a livelihood, and that on account of suffering with said diseases he will always be totally and permanently disabled. That plaintiff is suffering with what is known as duodenal ulcer for which he has had a gastro-enterostomy and that he has had repeated

occurrences and attacks of said condition, and that he is also suffering with neuritis.

"5. Plaintiff alleges that under said certificate of insurance No. 3905, issued to him by the defendant, that it agreed to pay to this plaintiff the sum of $2,000.00, the face of said policy, in the event plaintiff became totally and permanently disabled by bodily injury or disease before reaching the age of sixty years, and that if the plaintiff is or becomes totally disabled, and if he will be at all times thereafter wholly prevented thereby from engaging in any gainful occupation, and that if such total and permanent disability has existed for a period of six months, the defendant agreed to pay immediately to this plaintiff in full settlement of this policy, the amount of insurance in force under the same at the time and in the manner specified in said policy.

"6. Plaintiff alleges that after becoming totally and permanently disabled that he made application to defendant for blanks upon which to file proofs of his total disability, under the terms and conditions of said policy, and that said blanks were furnished him and he prepared and submitted proof of total and permanent disability and that at the time he became so totally and permanently disabled, and at the time of submitting said proof of total and permanent disability, that the plaintiff had not attained the age of sixty years and that said policy was in full force and effect."

Plaintiff then alleged that the defendant failed and refused to pay said plaintiff the benefits provided thereunder, and that plaintiff elected to receive said $2,000 in one sum instead of in installments. It is then alleged the employment of an attorney, and further allegations seeking to recover penalty, interest, and attorney's fees.

Paragraph 8 of plaintiff's petition alleges: "Plaintiff further alleges that Group Policy No. G–2377 issued by the defendant to Missouri Pacific Railroad Company is in the possession of said Railroad Company and is without the jurisdiction of this Court, and that this plaintiff does not have access to the same but that the defendant, Missouri State Life Insurance Company has a copy of said policy in its office, or can compile a certified copy of same from its records, and plaintiff demands that the defendant, Missouri State Life Insurance Company, produce, on the trial of this cause, the original policy issued by it to the Missouri Pacific Railroad Company, same being Group Policy No. G–2377, or produce from its records, or from said policy, a certi-

fied copy of said policy and file the same in this Court within two days of the date of the trial of this cause, the same to be used and introduced as evidence, and in default of the production of said policy, or a certified copy of the same from said policy or the records of the company by the defendant, secondary evidence of the contents of said policy will be introduced by the plaintiff herein if the plaintiff deems the same necessary."

The petition closes with a prayer for judgment for the sum of $2,000, interest, penalty, and attorney's fees.

The plaintiff was permitted to file a trial amendment wherein it is alleged: "Plaintiff would show to the Court that under the terms and conditions of said Group Policy No. G–2377, and under the terms and conditions of said Certificate No. 3905, issued under said Group Policy, by the defendant to this plaintiff, that the plaintiff is entitled to recover herein in this suit, as more fully set out and as shown by the terms and conditions of said Certificate No. 3905, a copy of which is attached hereto, and said Group Policy No. G–2377, a copy of which was furnished plaintiff by attorneys for defendant, is attached hereto, and made a part hereof, said certificate No. 3905, and said Group Policy being designated Exhibit 'A' and Exhibit 'B', and that said Group Policy No. G–2377 does not contain anything inconsistent with the terms of said certificate No. 3905, but is in accordance with the terms and provisions thereof, and that under the terms, provisions and conditions of said Group Policy and said certificate, plaintiff is entitled to recover."

The defendant's answer contains general demurrer, general denial, and further alleged in paragraph 3 of its answer as follows:

"For further answer herein defendant says the plaintiff is not entitled to recover any amount against it in this suit for the following reasons, to-wit:

"Because if plaintiff ever had the insurance alleged in his petition, said insurance terminated by reason of the nonpayment of the premiums due this defendant long before the alleged disabilities of the plaintiff arose.

"Defendant further alleges that the contract of insurance upon which the plaintiff sues provided that said policy for the employees shall terminate at the expiration of the period for which premiums are last deducted by the employer from the pay of the employee, or remitted by the employee to the employer unless the employee shall elect to continue the insurance in accordance with the conver·

sion privilege given on the second page of said certificate described in plaintiff's petition.

"Defendant says that no deductions were made by plaintiff's employer from plaintiff's pay after December, 1928; that no premiums were remitted by plaintiff or any other person for him since December, 1928; that plaintiff never elected to continue the insurance in accordance with the conversion privilege given on the second page of said certificate, or by virtue of any other provisions of the contract of insurance.

"Defendant alleges that by reason of the failures above stated, to pay any portion of the premiums due after December, 1928, the insurance which the plaintiff claims terminated and expired on January 1, 1929, and for the reasons stated plaintiff is not entitled to recover any amount in this suit.

Defendant further alleged a special denial that the Missouri Pacific Railroad Company was its agent for any purpose.

The court at the conclusion of the evidence submitted the case to the jury upon special issues, and, among other things, the jury found: That the plaintiff became totally disabled from engaging in any gainful occupation on June 2, 1931; that on same date he became permanently disabled from engaging in any gainful occupation; that such disability was the direct result of diseases of his body; that such disability has continuously since June 2, 1931, wholly prevented him from engaging in any gainful occupation; and that such disability will continue during the remainder of his life. The jury further found that the Missouri Pacific Railroad Company on June 2, 1931, and at all times prior thereto, had deducted and retained from the plaintiff's wages sums of money sufficient to pay all premiums when and as they became due on such policy to and including the said date of June 2, 1931. It was further found that $500 was a reasonable attorney's fee.

The court entered judgment for the plaintiff for the sum of $2,740 and costs of suit, and the defendant has duly prosecuted this appeal.

█ The first contention of appellant is that appellee has not alleged a cause of action against the appellant. This contention is predicated upon the holding in Wann v. Metropolitan Life Ins. Co. (Tex. Com. App.) 41 S.W.(2d) 50, to the effect that a suit cannot be maintained upon a certificate alone in such cases, but it will be observed the court in this opinion also held, quoting: "In order for plaintiff in error to set up a cause of action

under the terms of the certificate it was incumbent upon him to allege and prove that the provisions of the group policy when construed in connection with the certificate and rider, entitled him to recover for the disability resulting from the injury sustained in the service of his employer."

It appears to us that appellee's original petition, taken in connection with his trial amendment, is sufficient under the above holding to allege a cause of action on the contract involved as against a general demurrer.

A further contention made by appellant with a great deal of force is that there is lack of any evidence to support the jury's finding that the railroad company made deductions from appellee's wages sufficient to pay all premiums when and as they became due on said policy to and including the date of June 2, 1931; and also that the evidence is insufficient to support the jury's finding that appellee was totally and permanently disabled within the provision of the policy of insurance.

In view of these contentions this court has reviewed the entire statement of facts and has concluded that the evidence is sufficient to support the jury's answer to both issues.

Appellant further urges that the jury's verdict will not support the judgment entered by the court in favor of appellee, in that there is no finding that the railroad company paid the premium deductions from appellee's wages to appellant. This contention calls for a determination of the question as to whether the appellee has protection under the group policy when the deductions were made from his wages by the railroad company, although the railroad company never remitted such premiums to appellant.

The certificate issued appellee was dated October 10, 1927, and thereafter deductions were made from his wages to take care of the monthly premium by the railroad company and remitted to appellant until the month of January, 1929, when the railroad company reported to appellant that no wages were due appellee from which the premium could be deducted. And the undisputed evidence shows that no premiums deducted by the railroad company from appellee's wages were remitted to the appellant after this time.

The complication arose out of the fact that appellee was sick during the month of January and a part of February, 1929, but returned to work about February 20, 1929, and continued in the service of the railroad company until June 2, 1931, when he withdrew

from the service because of the disability alleged. The evidence shows that the deductions for premiums on this insurance were usually made from the pay earned by an employee during the first half of the month, although it was sometimes made from the last half of the month's earnings. The railroad company paid its employees twice a month, on the 1st and the 15th, and always held back 15 days' pay. After appellee's retirement from the service because of his disability he remitted to the railroad company his premium on his policy by check for the months of July and August, 1931, which check was returned with the information that his insurance had lapsed in January, 1929, and appellant refused appellee blanks upon which to make proof of loss because the policy had lapsed in 1929. It is conceded by appellant in its brief that appellee was at all times until June 2, 1931, an employee of the railroad company; his absence during January and part of February, 1929, being only a temporary lay off of his own accord. It is further shown without controversy that the group policy of insurance issued by appellant to the railroad company was not canceled by the company, but was at all times here involved in full force and effect. No question is made about the amount of insurance carried by appellee nor the amount of the monthly premiums due by him. The group policy, among others, contains the following provisions:

"The insurance on eligible employees who make written application to the employer between October 1st, 1927, and November 1st, 1927, shall be effective from the date of application.

"Employees in the Occupational Classifications given above who complete six months continuous service with the Employer subsequent to October 1st, 1927, will be insured in accordance with the proceeding schedule provided they make written application to the employer for insurance hereunder within thirty-one days after the dates on which they complete six months' continuous service. Such insurance shall be effective from the first day of the policy month for which deductions from their pay are first made for this insurance.

"Employees who, by reason of an increase in salary, become eligible for an amount of insurance greater than that for which they were insured initially, as shown in the preceding schedule will be insured for the greater amount provided they make written application to the employer for this insurance within thirty-one days after the dates on which said salary increase becomes effective. Such insurance shall be effective from the first day of the policy month for which deductions from their pay are first made for this insurance.

"Employees in the Occupational Classifications given above who do not apply for insurance hereunder within the period above will be insured in accordance with the preceding paragraphs upon presenting to the Company satisfactory evidence of their insurability at the time they apply for insurance hereunder. Such insurance shall be effective from the first day of the policy month next succeeding the dates on which their applications are approved by the Company.

"Any sum payable by the Company as death claim shall be paid at the Home Office of the Company to the beneficiary designated by the insured in accordance with the terms of this policy. If the beneficiary named by the insured be not living then the amount due under this policy shall be paid to the Executors, Administrators or Assigns of the insured.

"This policy is issued for the term of one year and shall be effective from Noon, Standard Time, October 1st, 1927, at Saint Louis, Missouri, in consideration of the application of the Employer, an advance premium of FIVE HUNDRED AND 00/100 DOLLARS, and of such further premiums as are provided for herein.

"Employees Insured—Employees are automatically insured in accordance with the terms of the Plan of Insurance on Page One, subject to the terms of this policy.

"The Employer shall furnish the Company with the names of all Employees as they become eligible for insurance hereunder, with the information as to each necessary to determine the age, the amount of insurance, and the effective date of the insurance.

"Unintentional omission on the part of the Employer to furnish the name of any Employee eligible for insurance hereunder shall not invalidate the insurance on the life of such Employee.

"Termination of Insurance—The insurance on any Employee shall cease at the expiration of the period for which premiums are last received by the Company for such Employee, except as hereinafter provided. If an Employee is disabled, given leave of absence, or temporarily laid off, the Employment need not be considered terminated unless Employer so elect.

"The Employer shall notify the Company of all Employees whose employment shall ter-

minate and also the dates of the termination of their employment.

"Premiums—All premiums are payable in advance at the Home Office of the Company, but may be paid to an authorized agent of the Company upon delivery of a receipt signed by the President or Vice-President, and countersigned by said Agent. If any premium shall not be paid when due, this policy shall terminate except as hereinafter provided.

"In addition to the advance premium there shall be due:

"1. To the Company—

"(a) The Balance, if any, of the first premium as determined by the amount of insurance on the Employee initially insured hereunder, such balance to be due when determined.

"(b) A pro rata premium for any additional or increased insurance, computed to the next date on which premiums shall be due, following the date such insurance is effective.

"2. To the Employer—

"A refund of any unearned premium paid for any Employee insured hereunder, whose insurance has terminated for any reason, other than death or permanent and total disability.

"The Company will furnish the Employer each month with a statement of any balance due the Company or the Employer on account of the premium adjustment due to changes in the insurance. Such balances shall be due monthly from the date hereof.

"Grace Period—Thirty-one days of grace will be allowed for the payment of every premium after the first, during which period the policy remains in force.

"Renewal Privilege—This policy may be renewed from year to year for a further term of one year at the option of the Employer, upon payment within the days of grace of the premium for the amount of insurance as renewed, as determined by the Schedule of Rates embodied herein.

"The Company reserves the right to decline to renew this policy at the end of any policy year if at that time less than fifty Employees or seventy-five per cent. of the Employees eligible for insurance hereunder, whichever is the greater, are insured hereunder.

"The Company also reserves the right to establish new premium rates at which subsequent renewals shall be computed at the end of each five year period from the date hereof. Any change in rates shall be determined by the Company's classified group mortality experience.

"Total and Permanent Disability Benefits —If any Employee insured under this policy shall furnish this Company with due proof that before having attained the age of 60 years, he or she has become totally and permanently disabled by bodily injury or disease, and that he or she is then, and will be at all times thereafter, wholly prevented from engaging in any gainful occupation, and that he or she has been so permanently and totally disabled for a period of six months, the Company will immediately pay to such Insured in full settlement of all obligations hereunder as to such Insured's life, the amount of insurance in force hereunder on such Insured at the time of the approval by the Company of the proofs as aforesaid.

"In addition to or independently of all other causes of total and permanent disability the Company will consider the entire and irrecoverable loss of the sight of both eyes, or the loss of use of both hands, or of both feet, or of one hand and one foot as total and permanent disability within the meaning of this provision.

"Individual Certificate of Insurance and Conversion Privilege—The Company will issue to the Employer for delivery to each Employee whose life is insured under this policy, an individual certificate setting forth a statement as to the insurance protection to which he is entitled and to whom payable. Any Employee of the Employer covered under this group policy shall, in case of the termination of Employment for any reason whatsoever, be entitled to have issued to him by the Company without evidence of insurability upon application to the Company made within thirty-one days after the termination of the insurance under this certificate and upon the payment of the premium applicable to the class of risks to which he belongs and to the form and amount of the policy at his then attained age, a policy of life insurance in any one of the forms customarily issued by the Company, except term insurance, in an amount equal to the amount of his protection hereunder at the time of such termination.".

The certificate issued appellee provides, among other provisions, the following:

"Missouri State Life Insurance Company "Group Policy G–2377    Certificate No. 3905.

"This is to certify that under and subject to the terms and conditions of a Group Policy of Insurance, No. G–2377, issued and delivered to the Missouri Pacific Railroad

Company (hereinafter called the Employer) by the Missouri State Life Insurance Company (hereinafter called the Company) the life of Grover A. Compton (hereinafter called Employee) is insured for the sum of Two Thousand Dollars, payable to His wife, Dora A. Compton as beneficiary if death shall occur while an Employee of the Employer during the continuance of the insurance under this certificate. Such payment shall be made in one amount or, at the election of the Employee, in monthly or weekly installments.

"The beneficiary may be changed by the Employee by notifying the Company through the Employer.

"The insurance provided by the said policy for the Employee shall terminate at the expiration of the period for which premiums are last deducted by the Employer from the pay of the Employee, or remitted by the Employee to the Employer, unless the Employee shall elect to continue the insurance in accordance with the Conversion Privilege given on the second page of this certificate.

"Missouri State Life Insurance Company
"M. E. Singleton, President."
"Dated October 10, 1927.

"Total and Permanent Disability Benefits.

"If the Employee shall furnish the Company with due proof that before having attained the age of sixty years, he or she has become totally and permanently disabled by bodily injury or disease, and that he or she is then, and will be at all times thereafter, wholly prevented thereby from engaging in any gainful occupation, and that he or she has been so permanently and totally disabled for a period of six months, the Company will immediately pay to the Employee in full settlement of all obligations hereunder, the amount of insurance in force hereunder on the Employee at the time of the approval by the Company of the proofs as aforesaid."

The authority for deduction of premiums was given as follows:

"Application and Order to Pay Group Insurance Premium.
"Certificate No. 3905.

"I hereby apply for group insurance under the terms of the group policy issued by the Missouri State Life Insurance Company and authorize the Missouri Pacific Railroad Company, my Employer, to deduct $1.60 monthly from my wages or salary to apply towards the payment of the premiums due under the aforesaid mentioned policy.

"Dated—October 10, 1927.
"[Signed] Grover A. Compton."

Construing the group insurance policy and the certificate issued appellee as constituting an indivisible contract between appellee and appellant, we find two separate and distinct provisions with reference to when appellee's insurance will terminate. In the group policy it is provided if the railroad company fails to remit the appellee's premium to appellant the insurance will terminate, while in the certificate delivered to appellee it is provided that the insurance provided by the policy for the employee shall terminate at the expiration of the period for which premiums are last deducted by the employer from the pay of the employee, or remitted by the employee to the employer. It is a well-settled rule of construction of such contracts that they are to be construed most strongly against the insurer, or the appellant in this case. Applying this rule and giving effect only to the provision for termination of the insurance as contained in the certificate, it is clear that the insurance of appellee did not terminate before June 2, 1931, as the jury found that the railroad company made the deductions from his wages to cover the premiums up to that time. The Supreme Court of Alabama in construing a similar contract to the one here involved held that the payment by the employee of his monthly premium through a deduction from his monthly salary by his employer who by prearrangement is to retain the same and make payment of monthly premiums on the group policy, is payment to the insurer so far as such employee is concerned. All States Life Ins. Co. v. Tillman, 226 Ala. 245, 146 So. 393.

If it should be held that there is no evidence to support the jury's findings that the railroad company made deductions from appellee's wages for his monthly premium due in January and February, 1929, this case is authority for the proposition that appellant cannot escape liability to appellee because the railroad company failed to make the deductions from his wages for the months of January and February when he was absent from his employment, if when he thereafter returned the company made such deductions but failed to report such deductions to appellant.

The total and permanent benefit provisions contained in the group policy applies only to employees. Therefore, if one becomes disabled by bodily disease as in this case, and will be at all times thereafter wholly prevented thereby from engaging in any gainful occupation, and such employee has been so

permanently and totally disabled for a period of six months, the employee must during this time be considered an employee of the railroad company, and, of course, as an employee he is entitled under the contract to pay his premium to the railroad company. Any other construction of this contract would entirely relieve appellant from any liability whatever under this provision of the contract.

It may be argued that when the appellee retired from the service of the railroad company on June 2, 1931, the insurance terminated unless the appellee take advantage of the conversion privilege provided for in the contract. It will be observed that the conversion privilege applies only to those employees who terminate their employment and to no other, and it will be further observed that the conversion privilege gives the right to secure from the appellant only life insurance and makes no provision for disability insurance such as that contained in the disability provision of the contract. We are of the opinion that appellee's policy did not lapse by not having paid those premiums, since he tendered to the railroad company his check for the amount of the premiums for the first 60 days of such period, which check was returned to him with the information that the policy had lapsed in January, 1929. A payment of a premium in Texas is permitted by check where the contract does not provide how such payment shall be paid. State Life Ins. Co. v. Nolen (Tex. Civ. App.) 13 S.W.(2d) 406. It is also held that an insurance company which refused to accept a check tendered for a premium on the ground that the policy had been canceled could not deny liability on the policy because the premium had not been paid. Indiana Nat. Life Ins. Co. v. McGinnis, 180 Ind. 9, 101 N. E. 289, 45 L. R. A. (N. S.) 192.

The evidence shows without dispute that appellee's wages from the railroad company amounted to between one and two hundred dollars per month, and the railroad company at all times from the date appellee authorized it to make deductions from his wages for his monthly premium due the appellant until June 2, 1931, had in its possession sufficient wages belonging to appellee from which it could have deducted the amount of the premiums, and no excuse is offered for the failure to make the deductions. No notice was given appellee of the failure by the railroad company to make the deductions, except the contention that the railroad company paid him all his wages each month; and from this fact he should have known that his insurance had lapsed. The evidence shows that the railroad company was making two other deductions from his wages monthly, one for $1.50 hospital dues and another for $2.30 for B. A. R. E.; and the deductions for this insurance was $1.60. The appellee lost some days from work, he made some overtime, and the railroad company, as above stated, held back fifteen days' wages, and appellee was working as a machinist. It appears to us that from all these circumstances it would hardly be just to appellee to say that he had notice of the fact that his insurance had lapsed. These facts, together with the provision in the contract, "Unintentional omission on the part of the employer to furnish the name of any employee eligible for insurance hereunder shall not invalidate the insurance on the life of such employee," are sufficient to bring the case within the general rule recognized in this state, to the effect that where the insured has left with the railroad company a sufficient sum for the payment of its installments, he is entitled to rely upon its making such deductions and a failure to make such deductions will not forfeit his insurance. Johnson v. Standard Life & Accident Ins. Co. (Tex. Civ. App.) 97 S. W. 831; Benefit Ass'n of Railway Employees v. Hancock, 248 Ky. 315, 58 S.W.(2d) 578, and authorities therein cited. If we are correct in this view, the complaint with reference to the sufficiency of the evidence to sustain the jury's findings that the railroad company made the deductions becomes immaterial.

We have carefully considered all of the appellant's assignments and have concluded that none of them present error, and the judgment of the trial court is entitled to be affirmed, and it is so ordered.